1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DAVID B. AAMODT and PATRICIA A.
AAMODT, husband and wife, and the marital
community composed thereof; SCOTT F.
ABRAMS and GLORIA E. ABRAMS, husband
and wife, and the marital community
composed thereof; DAVID ADLER and MARCIA
ADLER, husband and wife, and the marital
community composed thereof; PATRICIA A.
AHERN, a single woman; ALAN F.
ALEXANDER and PATRICIA J.
ALEXANDER, husband and wife, and the
marital community composed thereof;
MICHAEL J. ALLMAN and PATRICIA A.
ALLMAN, husband and wife, and the marital
community composed thereof; BIRGIT
AMUNDSON, a single woman; CAMILLE J.
ANDERSON, a single woman; LYNN
ARGYLE,  a single woman; DONALD ASELIN
and SHARON ASELIN, husband and wife, and
the marital community composed thereof;
VIRGINIA AUGUST, a single woman;
WILLIAM M. BACKLUND and PATRICIA A.
BACKLUND, husband and wife, and the marital
community composed thereof; KEVIN BAIL
and KARLA HEATH, husband and wife, and the
marital community composed thereof; BETH E.
BAKER, a single woman; BEBE BAKER and
SKIP BAKER, husband and wife, and the
marital community composed thereof; JUANITA
L. BALDWIN, a single woman; SHARON M.

Case No.

MASS ACTION

COMPLAINT
Case No.

010462-11  724451 V1



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

1  BALLISTY, a single woman; PATRICIA D.
BANNER, a single woman;  MARGIE Y.
2  BARATTO, a single woman; DAMON
BARDELEBEN and NANCY BARDELEBEN,
3  husband and wife, and the marital community
composed thereof; BERT BARGMANN and
4  GAYLE BARGMANN, husband and wife, and
the marital community composed thereof;
5  ROBERT P. BARILETTI and NANCY J.
BARILETTI, husband and wife, and the marital
6  community composed thereof; STEVE R.
BARKER and RUTH L. BARKER, husband and
7  wife, and the marital community composed
thereof; DOROTHY F. BARTON, a single
8  woman; JOHN D. BATJER and DEBORAH D.
BATJER, husband and wife, and the marital
9  community composed thereof; DAVID W.
BECKER, a single man; JEAN BECKFORD and
10 SOLIS FORTUNATO, husband and wife, and
the marital community composed thereof;
11 ROBERT BELL and CATHERINE BELL,
husband and wife, and the marital community
12 composed thereof; BARRY BELOVSKY and
CLAIRE BELOVSKY, husband and wife, and
13 the marital community composed thereof;
GARLAND BERNS and JUDITH D. BERNS,
14 husband and wife, and the marital community
composed thereof; BARBARA BERNSTEIN, a
15 single woman; CRAIG L. BERRY and SIRI
BERRY, husband and wife, and the marital
16 community composed thereof; NASSER
BESSADA, a single man; PAUL G. BEST and
17 DINANNE L. BEST, husband and wife, and the
marital community composed thereof;
18 ADRIENNE BESTE, a single woman; CHERYL
BICK, a single woman; JOHN BICKERSTAFF
19 and ALICIA BICKERSTAFF, husband and wife,
and the marital community composed thereof;
20 GAIL F. BJORKMAN, a single woman; ALAN
BLACK and KATHERINE BLACK, husband
21 and wife, and the marital community composed
thereof; RONALD V. BLACK and STELLA J.
22 BALCK, husband and wife, and the marital
community composed thereof; MARGARET
23

24

25

26

COMPLAINT
Case No.

010462-11  724451 V1



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

BLACK, a single woman; RONALD W. BLUHM and SUSAN C. BLUHM, husband and wife, and the marital community composed thereof; CAROL A. BOBREK, a single woman; MOLLY M. BOLL, a single woman; RANDALL T. BORDEN and DEETTE D. BORDEN, husband and wife, and the marital community composed thereof; JOHN P. BORDENET and CECELIA J. BORDENET, husband and wife, and the marital community composed thereof; LINDA BORICHEWSKI and JOSEPH BORICHEWSKI, husband and wife, and the marital community composed thereof; DONNA J. BOVEE, a single woman; JAMES L. BOYLE and GRETCHANN E. BOYLE, husband and wife, and the marital community composed thereof; JOHN L. BOYLE and BARBARA E. BOYLE, husband and wife, and the marital community composed thereof; JAY E. BRACK, a single man; WILLIAM C. BRADFORD and SUNDAE BRADFOR, husband and wife, and the marital community composed thereof; JOHN F. BRADLEY and FRANCES M. BRADLEY, husband and wife, and the marital community composed thereof; LESLIE  BRADY and NANCY C. BRADY, a married couple and the marital community composed thereof; JANET R. BRANDY,  a single woman; ROBERT J. BRAUNSTEIN and SUSAN BRAUNSTEIN, a married couple and the marital community composed thereof; MARK A. BREIDENBACH,  a single man; WINTSTON BILL and NANCY BRILL, a married couple and the marital community composed thereof; LAWRENCE N. BRODER and SUSAN J. BRODER, a married couple and the marital community composed thereof; THERESA A. BRONSON, a single woman; MELVIN BROOK and JENNIFER BROOK, a married couple and the marital community composed thereof; DAVID W. BROOKS and JEANNIE BROOKS, a married couple and the marital community composed thereof; ALVIN BROWN and DEBORAH R. BROWN, a

COMPLAINT

Case No.

010462-11  724451 V1

HAGENS BERMAN

1918 Eighth Avenue, Suite 3300 • Seattle, WA  98101
(206) 623-7292 • FAX (206) 623-0594

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

married couple and the marital community composed thereof; DIANE M. BROWN, a single woman; McDONALD G. BROWN and ROSEMARY P. BRWON, a married couple and the marital community composed thereof; JAMES A. BROZ and JANICE W. BROZ, a married couple and the marital community composed thereof; WILLIAM T. BRUCH and MARY P. BRUCH, a married couple and the marital community composed thereof; DAVID H. BRUNEAU and CHRYSTINA BRUNEAU, a married couple and the marital community composed thereof; THEODOR KEIL and JEAN KEIL, a married couple and the marital community composed thereof; LYNN A. BURCH, a single woman; MAGARET D. BURNELL, a single woman; GORDON BURNET and SALLY BURNET, a married couple and the marital community composed thereof; LARRY L. BURNS and JUDITH A. BURNS, a married couple and the marital community composed thereof; SHANNON BURRELL, a single woman; BARBARA BURROWS and MICHAEL J. USHKA, a married couple and the marital community composed thereof; JINNIE C. BUS, a single woman; JAMES R. BUSS and MARIAN F. BUSS; a married couple and the marital community composed thereof; JEREMY BUTLER and KAREN BUTLER, a married couple and the marital community composed thereof; BARBARA BYE and DICK BYE, a married couple and the marital community composed thereof; BEN C. BALEY, a single man; JOHN CALHOUN and JAMIE L. CALHOUN, a married couple and the marital community composed thereof; ELLANORA L. CAMPBELL, a single woman; ELLEN CAMPBELL, a single woman; JOHN D. CAMPBELL And KAREN L. CAMPBELL, a married couple and the marital community composed thereof; WILLIAM CARLSTROM and ANN CARLSTROM, husband and wife, and the marital community composed thereof;

COMPLAINT

Case No.

010462-11  724451 V1

HB HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

1  MICHAEL P. CARROLL and PATRICIA S.
2  CARROLL, a married couple and the marital
   community composed thereof; FRANK A.
3  CARTER and JOSEPHINE A. CARTER, , a
   married couple and the marital community
4  composed thereof; GAIL CERRA, a single
   woman; WAYNE V. CHAMBERS and
5  SHARON J. CHAMBERS, , a married couple
   and the marital community composed thereof;
6  PHILIP CHAN, a single man; AGNES Y.
7  CHANG, a single woman; CHUN CHANG and
   MYEONG CHANG, a married couple and the
8  marital community composed thereof; SANDRA
   B. CHIVERS, a single woman; DAVID M.
9  CHRISTIAN And MARLENE K. CHRISTIAN,
   a married couple and the marital community
10 composed thereof; CHUN REVOCABLE
11 LIVING TRUST; CAROL JEAN CHURCH, a
   single woman; DALE CLARK and JANET LEA
12 CLARK, , a married couple and the marital
   community composed thereof; KURT
13 CLASSEN and KATIE BUCHAN CLASSEN, ,
14 a married couple and the marital community
   composed thereof; JAMES C. CLEMETSON
15 and SHARON CLEMETSON, , a married couple
   and the marital community composed thereof;
16 PHILIP P. COADY and ELIZABETH A.
17 COADY, , a married couple and the marital
   community composed thereof; COADY LIVING
18 TRUST; ROGER L. COLEMAN and
   SOLWEIG B. COLEMAN, , a married couple
19 and the marital community composed thereof;
   JAY COLLINS and PAMELA COLLINS, , a
20 married couple and the marital community
   composed thereof; JOHN CONNELLY and
21 EVELYN CONNELLY, , a married couple and
22 the marital community composed thereof;
   CONNELLY FAMILY TRUST; KAREN
23 MCBRIDE COOK, a single woman; MIKE
   COOK and LEE ANN COOK, husband and
24 wife, and the marital community composed
   thereof; JOHN G. COPERNOLL, a single man;
25 DAVID C. CORREA and VERNALEE W.
26 CORREA, a married couple and the marital

COMPLAINT
Case No.



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1  community composed thereof; ELEANOR
CORRIGAN, a single woman; GWEN
2  COTTINGHAM and DALE STIRN, a married
couple and the marital community composed
3  thereof; ERLENE COURTNEY, a single
woman; AGNES CRIST and PER-ERIK
4  MANSSON, a married couple and the marital
community composed thereof; JEAN K.
5  CROCKER, a single woman; DORIS M.
CROSIER, a single woman; INDY CROWLEY
6  and CHERYL CROWLEY, a married couple and
the marital community composed thereof; LYNN
7  S. CUSHMAN and JULIE P. CUSHMAN, a
married couple and the marital community
8  composed thereof; JAY R. CUSHNIE and LOIS
J. CUSHNIE , a married couple and the marital
9  community composed thereof; CUSHNIE
FAMILY TRUST; DIANE L. CVETOVICH, a
10  single woman; CARL A. CZAJKOWSKI and
HELENA J. CZAJKOWSKI, a married couple
11  and the marital community composed thereof;
JANA CZECH, a single woman; CAROL
12  DAHLBERG, a single woman; JAMES L.
DALGARN and IRENE DALGARN, a married
13  couple and the marital community composed
thereof; PATRICK E. DAVIDSON and
14  LINETTE WYATT, a married couple and the
marital community composed thereof; SHARON
15  D. DAVIS, a single woman; THOMAS W.
DAVIS and TERESA C. DAVIS, a married
16  couple and the marital community composed
thereof; HENK I. DAWSON and ELKE
17  DAWSON, a married couple and the marital
community composed thereof; ROGER L.
18  DEEGAN and SANDRA J. DEEGAN, a married
couple and the marital community composed
19  thereof; CHARLOTT DEFRANCES, a single
woman; DAVID DEINES, a single man;
20  LYNDA DENNEMARCK, a single woman;
EDWIN J. DESCAMP and JEANNE E.
21  DESCAMP, a married couple and the marital
community composed thereof; RICHARD E.
22  DILL and KATHLEEN J. DILL, a married
couple and the marital community composed

23

24

25

26

COMPLAINT
Case No.

010462-11  724451 V1

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

1   thereof; THOMAS P. DILLON and BEVERLY
2   A. DILLON, a married couple and the marital
    community composed thereof; ROBERT E.
3   DIXON and EDITH L. DIXON, a married
    couple and the marital community composed
4   thereof; RANDY A. DOBLAR and DEBRA M.
    DOBLAR, a married couple and the marital
5   community composed thereof; ALAN R. DOE
    and NORMA F. DOE, a married couple and the
6   marital community composed thereof;
7   BEVERLY DOMAN, a single woman;
    THOMAS J. DONAHEY and LINDA J.
8   DONAHEY, a married couple and the marital
    community composed thereof; TURRELL S.
9   DOOLITTLE, a single man; DANIEL F.
    DORAN and JANETTE F. DORAN, a married
10  couple and the marital community composed
11  thereof; JUDY DOW, a single woman;
    WILLIAM L. DOWNS and MYRNA DOWNS,
12  a married couple and the marital community
    composed thereof; DOWNS LIVING TRUST;
13  BENJAMIN Z. DRAJPUCH and JACALYN
    DRAJPUCH, a married couple and the marital
14  community composed thereof; THOMAS
15  DRZEWIECKI and ANGELA DRZEWIECKI, a
    married couple and the marital community
16  composed thereof; ROBERT A. DUCHI and
    JANICE C. DUCHI, a married couple and the
17  marital community composed thereof;
18  BEVERLY J. DUKE, a single woman; THE
    DUKE TRUST; GEORGE S. DULEBA, a single
19  man; GARY A . DUNN, a single man; EBBE B.
    EBBESEN and JOANNE T. EBBESON, a
20  married couple and the marital community
    composed thereof; JERRY L. EDGERTON and
21  DARLENE G. EDGERTON, a married couple
    and the marital community composed thereof;
22  MICHAEL R. EDGMAND and JUDITH J.
    EDGMAND, a married couple and the marital
23  community composed thereof; LEILA EDWINS,
24  a single woman; ELLEN L. EGGE, a single
    woman; DAVID ELDER and MURIEL ELDER,
25  a married couple and the marital community
    composed thereof; MARICA J. ELLISON, a
26

COMPLAINT
Case No.

010462-11  724451 V1

HB  HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

single woman; JAMES R. EMCH, a single man;
THOMAS H. ESSIG and JUDITH ESSIG, a
married couple and the marital community
composed thereof; STEVE ESTBY and DENISE
ESTBY, a married couple and the marital
community composed thereof; SANDRA
EVANS and WAYNE EVANS, a married couple
and the marital community composed thereof;
MASON G. FARRELL, JR. and LINDA H.
FARRELL, a married couple and the marital
community composed thereof; ROBERT
FERGUSON and SHIRLEY FERGUSON, a
married couple and the marital community
composed thereof; ELEANOR J. FERRER, a
single woman; JAMES J. FISCHER and
JUDITH A. FISCHER, a married couple and the
marital community composed thereof;
KENNETH FLAJOLE and COLLEEN A.
FLAJOLE, a married couple and the marital
community composed thereof; JOYCE D.
FLYNN, a single woman; GEORGE FORD and
NANCY SNELL, a married couple and the
marital community composed thereof; HUGH J.
FORD and JOYCE D. FORD, a married couple
and the marital community composed thereof;
JEFFREY A. FORREY and JEANNE FORREY,
a married couple and the marital community
composed thereof; DON W. FOWLER and
MARY C. FOWLER, a married couple and the
marital community composed thereof; RONALD
L. FRANKLIN and LESLYN M. ROSE
FRANKLIN, a married couple and the
community composed thereof; MARVIN
FREDRICKSON and LINDA L.
FREDRICKSON, a married couple and the
marital community composed thereof; JEFFREY
H. FRENCH and CAROLYN M. FRENCH, a
married couple and the marital community
composed thereof; ROY A. FRICKE and TING
Y. FRICKE, a married couple and the marital
community composed thereof; KURT
FRIEDRICH and KATLEEN FRIEDRICH, a
married couple and the marital community
composed thereof; JAMES A. FRY and JODIE



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1    L. FRY, a married couple and the marital
community composed thereof; MICHAEL
2    FULLER and MARY FULLER, a married
couple and the marital community composed
3    thereof; JAMES GALLAGHER and BETTY
GALLAGHER, a married couple and the marital
4    community composed thereof; DONALD E.
GARCIA and DOLORES GARCIA, a married
5    couple and the marital community composed
thereof; RICHARD E. GARDNER and
6    SAVILLE H. GARDNER, a married couple and
7    the marital community composed thereof;
ROBALD L. GARRETT and SANDRA L.
8    GARRETT, a married couple and the marital
community composed thereof; GARRETT
9    LIVING TRUST; DALE MARTIN GARVEY,
10    JR. and JANICE MOORE, a married couple and
the marital community composed thereof;
11    RONALD V. GAUTREAU and SYBIL H.
12    GAUTREAU, a married couple and the marital
community composed thereof; ZHENIN GELT
13    and LYUDMILA GELT, a married couple and
the marital community composed thereof;
14    JOSEPH W. GELZER and LORELEI L.
GELZER, a married couple and the marital
15    community composed thereof; ROBIN S.
16    GENTILE and RONALD L. GENTILE, a
married couple and the marital community
17    composed thereof; DENNIS GIBBS, a single
man; LAWRENCE C. GIBSON and DIANE M.
18    GIBSON, a married couple and the marital
19    community composed thereof; ALLEN GLENN
and SANDRA GLENN, a married couple and
20    the marital community composed thereof;
MIKELL GOE and RICHARD GOE, a married
21    couple and the marital community composed
22    thereof; DONALD W. GOETSCH and
KATHLEEN L. GOETSCH, a married couple
23    and the marital community composed thereof;
BARBARA D. GOLDHAMMER, a single
24    woman; ROBERT GOODKIN and SANDRA R.
GOODKIN, a married couple and the marital
25    community composed thereof; DAVID M.
26    GORDON and DIANE GORDON, a married

COMPLAINT
Case No.



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

1   couple and the marital community composed
thereof; SARAH L. GORE, a single woman;
2   MARJORIE N. GORODKO, a single woman;
KENNETH T. GRAAT and PAMELA D.
3   GRAAT, a married couple and the marital
community composed thereof; STEPHEN
4   GRAY and CAROLINE A. GRAY, a married
couple and the marital community composed
5   thereof; PAUL W. GRECO and MARELU M.
GRECO, a married couple and the marital
6   community composed thereof; SKIP GREENE
and LINDA GREENE, a married couple and the
7   marital community composed thereof;
RAYMOND GREGIORE and CHRISTINE
8   GREGOIRE, a married couple and the marital
community composed thereof; WILLIAM
9   CHARLES GRESS, III and RUBY ANN
GRESS, a married couple and the marital
10  community composed thereof;  PATRICIA L.
GRIBBON and WILLIAM T. GRIBBON, a
11  married couple and the marital community
composed thereof; JEFFREY D. GROSSMAN
12  and VIVIAN GROSSMAN, a married couple
and the marital community composed thereof;
13  PATRICIA E. GUERNSEY, a single woman;
ARTHUR L. GURTEL and SHARON F.
14  GURTEL, a married couple and the marital
community composed thereof; LUCIAN G.
15  GUTHRIE and JO ANN A. GUTHRIE, a
married couple and the marital community
16  composed thereof; JANINE R. GWILYM and
MILES L. GWILYM, a married couple and the
17  marital community composed thereof; JOEL E.
HAAS and CAROLYN A. HAAS, a married
18  couple and the marital community composed
thereof; JEFFREY HAGANDER and LUCIA
19  HAGANDER, a married couple and the marital
community composed thereof; JOELL L.
20  HAGBERG, a single individual; JAMES O.
HAGEN and NANCY C. HAGEN, a married
21  couple and the marital community composed
thereof; EUGENE ROSS HAISCH, JR. and
22  WYNONNA D. HAISCH, a married couple and
the marital community composed thereof;

23

24

25

26

COMPLAINT
Case No.

HB   HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

010462-11  724451 V1

KAREN JEAN HALL, a single woman;
ANNETTE I. HALLEN, a single woman;
KENNETH A. HAMERNIK and PEGGY ANN
HAMERNIK, a married couple and the marital
community composed thereof; MERRIE E.
HAMLIN, a single individual; HAMMERBACK
FAMILY TRUST; JESSE E. HAMMOND and
SANDRA J. HAMMOND, a married couple and
the marital community composed thereof; JOHN
K. HANCOCK and JACQUELYN HANCOCK,
a married couple and the marital community
composed thereof; ROBERT L. HANDLEY and
CELIA B. HANDLEY, a married couple and the
marital community composed thereof; JEAN M.
HANSEN, a single individual; EDWARD M.
HARTSTEIN,  a single man; RICHARD R.
HASKITT and JOYCE E. HASKITT, a married
couple and the marital community composed
thereof; GAIL . HAWLEY, a single woman;
DAVID K. HAYES, JR. and SUSAN D.
HAYES, a married couple and the marital
community composed thereof; BARBARA
HEADMAN, a single woman; GEORGE ROSS
HEATH and LORNA M. HEATH, a married
couple and the marital community composed
thereof; WILLIAM R. HEGGER and KRISTINE
A. HEGGER, a married couple and the marital
community composed thereof; KARL A.
HEILBORN and MARIE HEILBORN, husband
and wife, and the marital community composed
thereof; SUSAN HELLER, a single woman;
JOCELYN B. HELM, a single woman; NOEL
A. HENDERSON and CAROLYN J. HARRIS, a
married couple and the marital community
composed thereof; HESS LIVING TRUST;
RICHARD HETHERINGTON and ANN
HETHERINGTON, a married couple and the
marital community composed thereof; CHERYL
HIGGINS and JAN HIGGINES, a married
couple and the marital community composed
thereof; WILLIAM A. HILTON, a single man;
WINEFRED T. HIRANO, a single individual;
CHARLES S. HOFF and SHEILA R. HOFF, a
married couple and the marital community

COMPLAINT
Case No.

010462-11  724451 V1

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

composed thereof; NEIL R. HOFFMAN and
MARIANNE M. HOFFMAN, a married couple
and the marital community composed thereof;
KERMIT L. HOLMAN and AUDREY R.
HOLMAN, a married couple and the marital
community composed thereof; BURDETTE
HOLMES and SHARON L. HOLMES, a
married couple and the marital community
composed thereof; JAMES A. HOOKER and
ALME LEE HOOKER, a married couple and the
marital community composed thereof; JACK
HOOPER and ANDREA L. WELKER, a
married couple and the marital community
composed thereof; BRIAN HORAN and SUE
ATKINSON HORAN, a married couple and the
marital community composed thereof; JAMES F.
HORRELL and BARBARA HORRELL, a
married couple and the marital community
composed thereof; FRANK R. HOUMIEL, a
single man; LORRAINE HOUMIEL, a single
woman; ELEANOR M. HOWARD and
ROBERT C. HOWARD, a married couple and
the marital community composed thereof;
HOXIE REVOCABLE TRUST; PHILIP HOY
and BRENDA WEST, a married couple and the
marital community composed thereof; ALICE
HUANG, a single woman; JANE R. HUBBELL,
a single woman; ALLEN HUGHES and
NANCY HUGHES, a married couple and the
marital community composed thereof;  BARRY
HUI and AMY YUEN-FUN, a married couple
and the marital community composed thereof;
FRANK HUI and YVONNE HUI, a married
couple and the marital community composed
thereof; STANLEY D. HUMANN and KAY A.
HUMANN, a married couple and the marital
community composed thereof; DAVID
HUNTMAN and SHEILA HUNTMAN, a
married couple and the marital community
composed thereof; DAVID R. HYDE and
DAPHNE E. HYDE, a married couple and the
marital community composed thereof; MARK R.
IRAOLA and KAREN E. IRAOLA, a married
couple and the marital community composed

COMPLAINT
Case No.

010462-11  724451 V1



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

thereof; MORRIS R. ISRAEL and NANCY E. ISRAEL, a married couple and the marital community composed thereof; MARILYN IVERSON, a single woman; RANDALL V. JACKSON and PATRICIA K. JACKSON, a married couple and the marital community composed thereof; JAMES FAMILY TRUST; LINDA A. JATON and WAYNE JATON, a married couple and the marital community composed thereof; THOMAS L. JENKINS and DIANE M. JENKINS, a married couple and the marital community composed thereof; WILLIAM C. JENSEN and CAROL W. JENSON, a married couple and the marital community composed thereof; CANDACE JOHNSON and RONALD JOHNSON, a married couple and the marital community composed thereof; GARY JOHNSON and VERLE JOHNSON, a married couple and the marital community composed thereof; JOHN N. JOHNSON and VIRGINIA A. JOHNSON, a married couple and the marital community composed thereof; JOAN M. JOHNSTON, a single woman; JOSEPHINE A. HARVEY, a single woman; LAWRENCE A. KAHN and ROSANNE S. COHN, husband and wife, and the marital community composed thereof; STEPHEN E. KALISH and SUZANNE H. KALISH, husband and wife, and the marital community composed thereof; SAT DEV KAPAHI, a married man, individually and as Trustee of the KAPAHI FAMILY TRUST; ASHOK N. KATTI and SUDHA N. KATTI, husband and wife, and the marital community composed thereof; KAREN V. KELLY, a single woman; DON M. KENNEDY and PATRICIA L. KENNEDY, husband and wife, and the marital community composed thereof; ROBERT B. KENNEDY and SANDRA L. KENNEDY, husband and wife, and the marital community composed thereof; CECILE E. KERKOF and MICHELLE M. KIRWIN, individually, and the Washington State Registered Domestic Partnership composed thereof; MAURICE A.

COMPLAINT
Case No.

010462-11 724451 V1

HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

KERKOF and CONSTANCE E. KERKOF, husband and wife, and the marital community composed thereof; THOMAS KIENTZ, a single man; BRIAN KIMBALL and BARBARA L. KIMBALL, husband and wife, and the marital community composed thereof; TIMOTHY M. KIMSEY and GLENDA M. KIMSEY, husband and wife, and the marital community composed thereof, individually and as Trustees for the KIMSEY LIVING TRUST; DAVID KING and KAREN KING, husband and wife, and the marital community composed thereof; RUTH KING, a single woman; RALPH A. KINGMAN, a single man; ANTHEA KJERULFF, a single woman; WILLIAM G. KNIGHT and DOROTHY A. GRAHAM, husband and wife, and the marital community composed thereof; DANIEL B. KOEBEL, an unmarried man, and SHARON L. COOPER, an unmarried woman; MICHAEL KOPPEL and RICKI KOPPEL, husband and wife, and the marital community composed thereof; MARGARET M. KRAHN, a single woman; RODNEY B. KREBS and JUDY L. KREBS, husband and wife, and the marital community composed thereof, individually and as Trustees for the KREBS FAMILY TRUST; OI LING KRIEFF, a single man; MIN-CHIU KUO, a single woman; KENNETH R. KUSHIN, a single man; MARILYN KUSSICK , a single woman, individually and as Trustee of the LEON AND MARILYN KUSSICK REVOCABLE TRUST; ROBERT M. LAGUARDIA and ROSE C. LAGUARDIA, husband and wife, and the marital community composed thereof; STEVEN B. LANMAN and BETTY L. LANMAN, husband and wife, and the marital community composed thereof; NORMAN A. LARSON and BARBARA L. LARSON, husband and wife, and the marital community composed thereof; MARIAM LATIF, a single woman, individually and on behalf of IMMOVENTURE, LLC, a Georgia limited liability company; BARRY C. LATTER and SUSAN E. LATTER, husband and wife, and the marital community composed



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

thereof; PIERRE LAUZON and EILEEN M.
LAUZON, husband and wife, and the marital
community composed thereof; CHARLES W.
LAWRENCE and LOIS L. LAWRENCE,
husband and wife, and the marital community
composed thereof; VIRGINIA F. LAWSON, a
single woman; JANIS B. LEE, a single woman;
LYNDEN D. LEE and HELEN B. LEE, husband
and wife, and the marital community composed
thereof; DEAN LESTER and DIANNE
LESTER, husband and wife, and the marital
community composed thereof; BARBARA A.
LEWIS, a single woman, and MICHELLE R.
BURTON, a single woman; W. WAYNE
LICHTENBERGER and BONNIE A.
LICHTENBERGER, husband and wife, and the
marital community composed thereof; JOHN A.
LIEBOWITZ and DIANE B. LIEBOWITZ,
husband and wife, and the marital community
composed thereof; WILMOT H. LILLY, III and
MARILYN R. LILLY, husband and wife, and
the marital community composed thereof;
LAURENCE T. LINDE and GAIL A. LINDE,
husband and wife, and the marital community
composed thereof; NANCY I. LINDSTROM, a
single woman; ANNA LISINA, a single woman;
JOHN LIU and WINNIE LIU, husband and wife,
and the marital community composed thereof;
FRANCES W. LLOYD, a single woman;
GILBERT A. LONG and ILONE D. LONG,
husband and wife, and the marital community
composed thereof; JOAN S. LONG, a single
woman; PATRICIO LOPEZ and NORA
GUZMAN, husband and wife, and the marital
community composed thereof; BONNIE
LORENZ, a single woman; JERI L.
LOVELAND, a single woman; GORDON H.
LOWELL and LINDA K. LOWELL, husband
and wife, and the marital community composed
thereof; DAVID J. LUBOCKI and JACKIE C.
LUBOCKI, husband and wife, and the marital
community composed thereof; SUSAN A.
LUCAS, a single woman; MATTHEW B.
LUEBBERS and CYNTHIA L. LUEBBERS,

COMPLAINT
Case No.

010462-11 724451 V1

HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

husband and wife, and the marital community
composed thereof; HAROLD L. LUHN and
KAREN R. LUHN, husband and wife, and the
marital community composed thereof; FLOYD
M. LUKECART and LORA I. LUKECART,
husband and wife, and the marital community
composed thereof; FREDRICK J. LUKSON and
CAROLYN K. LUKSON, husband and wife,
and the marital community composed thereof;
KENNETH D. LYON and ROBERTA J. LYON,
husband and wife, and the marital community
composed thereof; MORTEN T. B. JOSLIN and
ALMA V. JOSLIN, husband and wife, and the
marital community composed thereof,
individually and as Trustees for the M&A
JOSLIN FAMILY TRUST; DOUGLAS K.
MACDUFF and KAREN D. MACDUFF,
husband and wife, and the marital community
composed thereof; CHERIE K. MACLANE, a
single woman;  DAVID M. MAGNUSON and
DIANE L. MAGNUSON, husband and wife, and
the marital community composed thereof;
CHERI LYN MAHONEY and DARWIN J.
SAMU, wife and husband, and the marital
community composed thereof; MARGARET C.
MALONE, a single woman; RICHARD JOHN
MARASCO and DARLENE D. MARASCO,
husband and wife, and the marital community
composed thereof, individually and as Trustees
for the MARASCO FAMILY TRUST;
RONALD L. MARKEZICH and BEVERLY J.
MARKEZICH, husband and wife, and the
marital community composed thereof;
RICHARD D. MARSHALL and NANCY K.
MARSHALL, husband and wife, and the marital
community composed thereof; DALE A.
MARTIN and SUSAN D. MARTIN, husband
and wife, and the marital community composed
thereof, individually and as Trustees of the
DALE A. MARTIN AND SUSAN D. MARTIN
LIVING TRUST; JAMES E. MARTINEAU and
KATHLEEN M. MARTINEAU, husband and
wife, and the marital community composed
thereof; STEVEN I. MATHENY and ANITA R.

COMPLAINT
Case No.

010462-11 724451 V1

HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

MATHENY, husband and wife, and the marital community composed thereof; DONALD L. MATTHES and SUSAN J. MATTHES, husband and wife, and the marital community composed thereof; DAVID E. MATTHIAS and JUDY A. MATTHIAS, husband and wife, and the marital community composed thereof; GEOFFREY MAYER and SUSAN MAYER, husband and wife, and the marital community composed thereof; CHARLES J. MCCALLUM, JR. and PENNIE J. MACCALLUM, husband and wife, and the marital community composed thereof; JOHN R. MCCANDLESS and CAROL A. MCCANDLESS, husband and wife, and the marital community composed thereof; KURT D. MCCANN and MARY DEE MCCANN, husband and wife, and the marital community composed thereof;  RONALD A. MCCRAY and CAROL LEE MCCRAY, husband and wife, and the marital community composed thereof; STEPHEN E. MCFARLAND, SR. and ANNE RACKERS MCFARLAND, husband and wife, and the marital community composed thereof; ROBERT MCINTOSH and LOIS C. MCINTOSH, husband and wife, and the marital community composed thereof; THOMAS A. MCKAY and SHEILA E. MCKAY, husband and wife, and the marital community composed thereof; DAVID MCMANAMON and MELEAH D. MCMANAMON, husband and wife, and the marital community composed thereof; KENNETH D. MCRAE, a single man; JAMES MEAD and JULIE MEAD, husband and wife, and the marital community composed thereof; S. RICK MEIKLE and KAREN T. MEIKLE, husband and wife, and the marital community composed thereof; DONALD MEISER and MARLENE MEISER, husband and wife, and the marital community composed thereof; MARGARITA E. MENDOZA and JUSTINIANO R. MENDOZA wife and husband, and the marital community composed thereof; STEPHEN A. MEREDITH and LINDA L. MEREDITH, husband and wife, and the marital

HB HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

1  community composed thereof; MIKE
2  MESAROS and ROZI MESAROS, husband and
   wife, and the marital community composed
3  thereof; ROBERT E. MICHALAK, a single
   man, individually and as Trustee of the
4  MICHALAK LIVING TRUST; JOSEF
   MICKLITZ and ELIZABETH MICKLITZ,
5  husband and wife, and the marital community
   composed thereof, individually and as Trustees
6  of the JOSEF MICKLITZ AND ELIZABETH
   MICKLITZ FAMILY TRUST; JOHN J.
7  MIHOVILOVICH and DONNA J.
8  MIHOVILOVICH, husband and wife, and the
   marital community composed thereof;
9  RICHARD MILBRODT and BONNIE
   MILBRODT, husband and wife, and the marital
10 community composed thereof; MASARU
11 MINEMOTO and VICKI LYNN MINEMOTO,
   husband and wife, and the marital community
12 composed thereof, individually and as Trustees
   of the MASARU MINEMOTO AND VICKI
13 LYNN MINEMOTO REVOCABLE LIVING
   TRUST; DAVID S. MITCHELL and LILLY O.
14 MITCHELL, husband and wife, and the marital
15 community composed thereof; JEFFREY K.
   MOIR, a single man; DONALD M.
16 MONCRIEFF and ROSEMARY J.
17 MONCRIEFF, husband and wife, and the marital
   community composed thereof; TED L.
18 MONTGOMERY and KATHLEEN G.
19 MONTGOMERY, husband and wife, and the
   marital community composed thereof;
20 WILLIAM A. MOORE, a single man; JUDITH
   A. MORLAND, a single woman; ROBERT S.
21 MORRIS and DONNA G. MORRIS, husband
   and wife, and the marital community composed
22 thereof; MICHAEL R. MORRISON and
23 JEANNE M. MORRISON, husband and wife,
   and the marital community composed thereof;
24 DORIS E. MOSER, a single woman, and
   BARBARA M. DOYLE, a single woman; JOE
25 L. MOYA and SALLY A. MOYA, husband and
   wife, and the marital community composed
26 thereof; MARIE MUDD, a single woman;

COMPLAINT
Case No.

010462-11 724451 V1

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

MICHELLE M. MURPHY, a single woman;
MICHAEL MYERS and KATHLEEN MYERS,
husband and wife, and the marital community
composed thereof; WILLIAM M. MYERS and
PRUDENCIA D. MYERS, husband and wife,
and the marital community composed thereof;
SHIRLEY J. NAFE, a single woman; WILLIAM
D. NEER and CAROLE M. NEER, husband and
wife, and the marital community composed
thereof; SANDRA A. NELSON, a single
woman; LAWRENCE H. NESS and JANE E.
NESS, husband and wife, and the marital
community composed thereof; JOHN NEWSOM
and SHARON NEWSOM, husband and wife,
and the marital community composed thereof;
DOUGLAS B. NICHOLSON and
CONSTANCE A. NICHOLSON, husband and
wife, and the marital community composed
thereof, individually and as Trustees of the
DOUGLAS B. AND CONSTANCE A.
NICHOLSON TRUST; MARSHA M.
NIEMAN, a single woman; JUDITH M.
NILSEN, a single woman; FRANK
NOMIYAMA and BETTY Y. NOMIYAMA,
husband and wife, and the marital community
composed thereof; KUMIKO Y. NOMOTO, a
single woman; JOHN C. NORRIS and GLENDA
C. NORRIS, husband and wife, and the marital
community composed thereof; LORENA M.
OBLANDER, a single woman; MICHAEL T.
OLIVER and BARBARA S. OLIVER, husband
and wife, and the marital community composed
thereof; ELLA JEAN OLSEN, a single woman;
HARVEY T. OLSON and MARIA M. OLSON,
husband and wife, and the marital community
composed thereof; DENNIS G. OPACKI and
JUDITH OPACKI, husband and wife, and the
marital community composed thereof; FRAN
OPHEIM, a single woman; MARVIN M.
OWENS and BETTY M. OWENS, husband and
wife, and the marital community composed
thereof; CONNIE PALAZZOLO, a single
woman, and ALICE HRNCIR, a single woman;
KATHLEEN. J. PARIS, M.D., a single woman,

COMPLAINT
Case No.

010462-11  724451 V1

1  individually and as Trustee of the KATHLEEN
J. PARIS, M.D. TRUST; HELEN C. PARRISH,
2  a single woman; JAMES D. PASS and SUSAN
PASS, husband and wife, and the marital
3  community composed thereof; JACK D.
PATTERSON and CATHERINE E.
4  PATTERSON, husband and wife, and the
marital community composed thereof;
5  RICHARD A. PAUL and KATHERINE G.
PAUL, husband and wife, and the marital
6  community composed thereof; JAMES A.
PAXTON and MARY L. PAXTON, husband
7  and wife, and the marital community composed
thereof, individually and as Trustees for the
8  JAMES AND MARY PAXTON FAMILY
REVOCABLE TRUST; CHARLES A.
9  PEDRIDO, a single man, individually and as
Trustee for the PEDRIDO FAMILY TRUST;
10  WILLIAM R. PEERCE, JR. and SUSAN L.
PEERCE, husband and wife, and the marital
11  community composed thereof; KRISTINE S.
PEPPER, a single woman; MICHAEL A.
12  PERKINS and SHELLEY M. PERKINS,
husband and wife, and the marital community
13  composed thereof; DIANE M. PETERSON, a
single woman; DOUGLAS W. PETERSON and
14  MARYANNE PETERSON, husband and wife,
and the marital community composed thereof;
15  ROGER F. PETERSON and DIANNE LISLE
PETERSON, husband and wife, and the marital
16  community composed thereof; JOHN J.
PHILLIPS and ELEANOR F. PHILLIPS,
17  husband and wife, and the marital community
composed thereof; ROBERT L. PIRTLE and
18  JENNIFER PIRTLE, husband and wife, and the
marital community composed thereof;
19  STEPHEN V. W. POPE and ANDREA A.
POPE, husband and wife, and the marital
20  community composed thereof; ROSE PORTER,
a single woman; GREGORY R. POWERS and
21  MARIANNE N. POWERS, husband and wife,
and the marital community composed thereof;
22  CHRISTINE D. PRESLEY, a single woman,
individually and as Trustee of the CHRISTINE
23

24

25

26

COMPLAINT
Case No.

HB  HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

1  D. PRESLEY TRUST; ROBERT C. PRINGLE
2  and TINA A. PRINGLE, husband and wife, and
   the marital community composed thereof;
3  CAROL WERTHEIMER PROESEL, a single
   woman; RONALD F. RADKE and RUTH E.
4  RADKE, husband and wife, and the marital
   community composed thereof; JEANETTE B.
5  RAGSDALE and BOBBY J. RAGSDALE, wife
   and husband, and the marital community
6  composed thereof; DIANA L. RALL and
   STANLEY C. RALL, wife and husband, and the
7  marital community composed thereof; SUNDER
8  RANGARAM and CAROL ANN
   RANGARAM, husband and wife, and the
9  marital community composed thereof,
   individually and as Trustees for the SUNDER
10 RANGARAM AND CAROL ANN
11 RANGARAM TRUST; RICHARD W. RECOB
   and LINDA A. RECOB, husband and wife, and
12 the marital community composed thereof; JOHN
   D. REEVES and DIA M. REEVES, husband and
13 wife, and the marital community composed
   thereof; CHARLES REILLY and GAY ANN
14 REILLY, husband and wife, and the marital
   community composed thereof; JEAN A.
15 REITAN, a single woman; JANE J. REUBISH, a
16 single woman; RICHARD M. RESNIK and
   AMY M. RESNIK, husband and wife, and the
17 marital community composed thereof; LARRY
   O. RICHARDS and PATRICIA C. RICHARDS,
18 husband and wife, and the marital community
19 composed thereof; MARGARET R. RIEDER, a
   single woman; DENNIS J. RIEGER and
20 JANICE D. RIEGER, husband and wife, and the
   marital community composed thereof; KEIL A.
21 RIEGER and MORETTA RIEGER, husband and
   wife, and the marital community composed
22 thereof; VERA JANE RISDON, a single woman;
   DAVID ROBNETT  and GERALDINE
23 ROBNETT, husband and wife, and the marital
24 community composed thereof; RICHARD L.
   RODMAN and CAROL F. RODMAN, husband
25 and wife, and the marital community composed
26 thereof; ROMANO DOUGLAS P. ROMANO

COMPLAINT
Case No.

HB  HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

and ALLISON E. ROMANO, husband and wife, and the marital community composed thereof, individually and as Trustees for the ROMANO FAMILY LIVING TRUST; DAVID H. ROSENBERG and SANDRA WEINSTEIN ROSENBERG, husband and wife, and the marital community composed thereof; ODILE M. ROSENFELD, as Trustee of the GODIDI TRUST; DONALD A. ROSS and REDITH F. ROSS, husband and wife, and the marital community composed thereof; JULITTA A. ROSS, a single woman; HOWARD ROTH and KATHY ROTH, husband and wife, and the marital community composed thereof; GERHARD F. RUBEN and PALMA T. RUBEN, husband and wife, and the marital community composed thereof; HARRY A. RUBIN and CYNTHIA E. RUBIN, husband and wife, and the marital community composed thereof; SIGMUND P. RUDOWICZ  and ROSEMARY RUDOWICZ, husband and wife, and the marital community composed thereof; DIANE RUFF, a single woman; CATHLEEN A. RUGGIERO, a single woman; RICHARD G. RUHLAND and GERALDINE M. RUHLAND, husband and wife, and the marital community composed thereof; ROBERT RUSHING and GAIL RUSHING, husband and wife, and the marital community composed thereof; HARRIET L. RUSSELL, a single woman; WALTER R. RYAN, JR. and SARAH H. RYAN, husband and wife, and the marital community composed thereof, individually and as Trustees for the WALTER RIDGEWAY RYAN JR. AND SARAH COLEMAN HACKWORTH RYAN TRUST; JAMES R. SAARI and JOYCE M. SAARI, husband and wife, and the marital community composed thereof; ROBERT W. SACKMANN  and DOROTHY C. SACKMANN, husband and wife, and the marital community composed thereof; RICHARD C. SADLER and CHERYL L. SADLER, husband and wife, and the marital community composed thereof, individually and as Trustees for the RICHARD AND CHERYL SADLER FAMILY TRUST; ELLEN SALDANA, a single woman; PHILIP C.

COMPLAINT
Case No.

010462-11 724451 V1

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

1  SALVATORI and CONSTANCE M.
SALVATORI, husband and wife, and the marital
2  community composed thereof; JAMES C.
SANBORN and E. SUE SANBORN, husband
3  and wife, and the marital community composed
thereof; WANTLAND SANDEL and PHYLLIS
4  SANDEL, husband and wife, and the marital
community composed thereof; JIM D. SATHER
5  and BARBARA A. SATHER, husband and wife,
and the marital community composed thereof;
6  ANTHONY E. SCHAFF and PHYLLIS M.
SCHAFF, husband and wife, and the marital
7  community composed thereof; ARTHUR C.
SCHEUNEMANN and MICHELLE E.
8  OWENS, husband and wife, and the marital
community composed thereof; IRENE M.
9  SCHMIDT, a single woman; ROBERT A.
SCHULTZ, a single man; MICHAEL
10  SCHWARTZ and RENA SCHWARTZ, husband
and wife, and the marital community composed
11  thereof; MARSHALL R. SCOTT and GRACE
L. SCOTT, husband and wife, and the marital
12  community composed thereof; DANNY A.
SHAEFFER and DIANE M. SHAEFFER,
13  husband and wife, and the marital community
composed thereof; JOHN G. SHAFFER and
14  ADRIENNE H. SHAFFER, husband and wife,
and the marital community composed thereof;
15  TOM SHANLEY and SANDRA K.
SHANLEY, a married couple and the marital
16  community composed thereof;
JOHN C. SHANNON and SANDRA M.
17  SHANNON, husband and wife, and the marital
community composed thereof; MARILYN T.
18  SHAW, a single woman; DIANA G. SHEARER,
a single woman; ELIZABETH SHEERAN,
19  a single woman; CHRISTOPHER M. SHELDON
and REBECCA J. SHELDON, husband and
20  wife, and the marital community composed
thereof; JERRY W. SHIFLET and ARDIS
21  SHIFLET, husband and wife, and the marital
community composed thereof; JAMES O.
22  SHOULTS and DONNA M. SHOULTS,
husband and wife, and the marital community
23  composed thereof; DAVID SHRIVER and
SHARON SHRIVER, husband and wife, and the
24  marital community composed thereof; HARRY
J. SHRIVER, a single man; MARGARITA
25
26

COMPLAINT
Case No.

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

010462-11 724451 V1

1  SHTEYNBERG and MIKHAIL
SHTEYNBERG, wife and husband, and the
2  marital community composed thereof; KEVIN T.
SHYNE and FRANCINE C. SHYNE, husband
3  and wife, and the marital community composed
thereof; HERBERT W. SIEFKES and LOIS E.
4  SIEFKES, husband and wife, and the marital
community composed thereof; CHAKWAN
5  SIEW and MABEL SIEW, husband and wife,
and the marital community composed thereof;
6  JACOB A. SIGL and OLGA ANNE SIGL,
husband and wife, and the marital community
7  composed thereof; FRANCES CAROL
SIMMONS, a single woman; ROBERT C.
8  SMILOW and JEANIE L. SMILOW, husband
and wife, and the marital community composed
9  thereof; DONALD L. SMITH and F.
ERNESTINE SMITH, husband and wife, and the
10  marital community composed thereof; KIM W.
SMITH individually, and as Trustee of the KIM
11  SMITH LIVING TRUST; FRANKLIN P.
SOKOL and VIRGINIA M. SOKOL, husband
12  and wife, and the marital community composed
thereof; MARTIN P. SOKULSKI and
13  RACHELE A. SOKULSKI, husband and wife,
and the marital community composed thereof;
14  ARNOLD SOMERS, a single man; WILLIAM
M. STAAB, a single man; WILLIAM H.
15  STEIGER and SANDRA N. STEIGER, husband
and wife, and the marital community composed
16  thereof; MICHAEL J. STEPHENSON and
CAROL K. STEPHENSON, husband and wife,
17  and the marital community composed thereof;
PAUL R. STEVENS and PATRICIA A.
18  STEVENS, husband and wife, and the marital
community composed thereof; SANDRA
19  STORY, a single woman; MICHAEL T.
STRAINER, an unmarried man, and JUTTA
20  ROEHRIG, an unmarried woman; JAMES E.
STROH and MARY J. STROH, husband and
21  wife, and the marital community composed
thereof, individually and as Trustees for the
22  STROH REVOCABLE LIVING TRUST;
EUGENE J. STUMPF and ELLEN T. STUMPF,

COMPLAINT
Case No.

010462-11 724451 V1

HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

husband and wife, and the marital community composed thereof, individually and as Trustees for the LIVING TRUST OF EUGENE J. AND ELLEN T. STRUMPF; DAVID R. SUTHERLAND and MARION M. SUTHERLAND, husband and wife, and the marital community composed thereof, individually and as Trustees for the SUTHERLAND REVOCABLE LIVING TRUST; TREVOR M. SWANGARD and MARIANNE L. SWANGARD, husband and wife, and the marital community composed thereof; CORNELL K. SWANSON and SHIRLEY K. SWANSON, husband and wife, and the marital community composed thereof; J. SHANNON SWEATTE and JANET E. SWEATTE, husband and wife, and the marital community composed thereof; DONALD SWENSON and BARBARA SWENSON, husband and wife, and the marital community composed thereof; GARY SWOFFORD and DIANE SWOFFORD, husband and wife, and the marital community composed thereof; MARILYN J. SYLVESTER, a single woman; SYLVIA A. SZYMANSKI, a single woman; JUDY L. TALBOTT, a single woman; RICHARD N. TAUBER and BARBARA A. TAUBER, husband and wife, and the marital community composed thereof; AYE AYE TAY, a single woman; DEAN TAYLOR and JOBESS TAYLOR, husband and wife, and the marital community composed thereof, individually and as Trustees for the TAYLOR LIVING TRUST; DAVID D. TESSMER, a single man; BRUCE D. THOMPSON and RHODA THOMPSON, husband and wife, and the marital community composed thereof; WILLIAM G. THOMPSON and JUDITH L. THOMPSON, husband and wife, and the marital community composed thereof; MATTHEW W. THOMSON and GRACE THOMSON, husband and wife, and the marital community composed thereof; GERALD F. TICE and JANICE F. TICE, husband and wife, and the marital community composed

COMPLAINT
Case No.

010462-11 724451 V1

HAGENS BERMAN

thereof, individually and as Trustees for the
GERALD FRANK TICE AND JANICE FYRN
TICE FAMILY TRUST; WALTER K. TIMPE
and KATHRYN J. TIMPE, husband and wife,
and the marital community composed thereof;
ROBERT L. TOOLEN and LORRI L.
TOOLEN, husband and wife, and the marital
community composed thereof, individually and
as Trustees for the ROBERT L. TOOLEN
FAMILY TRUST; MARY TREMAIN, a single
woman; THOMAS H. TRIMBLE, a single man;
ROBERT F. TSCHUMPER and PATRICIA L.
TSCHUMPER, husband and wife, and the
marital community composed thereof,
individually and as Trustees for the
TSCHUMPER REVOCABLE TRUST;
MINORU TSUJI and JOAN TSUJI, husband and
wife, and the marital community composed
thereof, individually and as Trustees for the
MINORU AND JOAN TSUJI FAMILY
TRUST; CHARLES H. TURNER, a single man;
TURNPAUGH LISA and TIM TURNPAUGH,
wife and husband, and the marital community
composed thereof; BRENDA G. UTTER, a
single woman; PER VAAGA and KATHRYN
VAAGA, husband and wife, and the marital
community composed thereof; REX C.
VALENTINE and KEIKO VALENTINE,
husband and wife, and the marital community
composed thereof; DIANNE S. VALUCH and
THOMAS L. VALUCH, wife and husband, and
the marital community composed thereof;
FRANCES C. VAN PAEMEL, a single woman,
individually and as Trustee of the FRANCES C.
VAN PAEMEL TRUST; MYUNG JA KIM
VAN PATTEN, a single woman; PAUL E.
VANDERSTOEP and KAREN
VANDERSTOEP, husband and wife, and the
marital community composed thereof; ARIE
PIETER VANDERSTROOM and MAGDA
JOHANNA VANDERSTROOM, husband and
wife, and the marital community composed
thereof; NEIL L. VONNAHME and DENISE S.
VONNAHME, husband and wife, and the

COMPLAINT
Case No.

010462-11  724451 V1

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

marital community composed thereof; ALAN E.
VOORHEIS and JANICE VOORHEIS, husband
and wife, and the marital community composed
thereof; RICHARD L. WADE and SUSAN L.
WADE, husband and wife, and the
community composed thereof; RUSSELL T.
WAITE and MARILYN P. WAITE, husband
and wife, and the marital community composed
thereof; ROXANNE L. WALLACE, a single
woman; MARY WALMAR, a single woman;
JOSEPH T. WALSH and ELIZABETH C.
WALSH, husband and wife, and the marital
community composed thereof; SCOTT E.
WARREN, a single man; STANLEY D.
WARREN and PATRICIA A. WARREN,
husband and wife, and the marital community
composed thereof; PETER B. WASSERMAN
and BARBARA A. WASSERMAN, husband
and wife, and the marital community composed
thereof; KEITH WATENPAUGH and JOYCE
WATENPAUGH, husband and wife, and the
marital community composed thereof; JAMES
C. WECKER, a single man; SANDRA J.
WEDELL, single woman, individually and as
Trustee of the WEDELL LIVING TRUST;
STEPHEN J. WEHNER and ANDREA K.
WEHNER, husband and wife, and the marital
community composed thereof; JANICE T.
WEINBERG, a single woman; SUSAN C.
WHEELER, a single woman; DANIEL J.
WHELAN and SUSAN C. SCHUTTE, husband
and wife, and the marital community composed
thereof; ANN RHODES WHITE and RONALD
G. BANICK, wife and husband, and the marital
community composed thereof; EVERETT R.
WHITE and BETTY WHITE, husband and wife,
and the marital community composed thereof;
JOSEPH MICHAEL WILDERMAN, a single
man, and JACQUELINE K. ROBERTS, a single
woman, individually and as Trustee of the
JACQUELINE K. ROBERTS FAMILY
TRUST; JUDITH L. WILLINGHAM, a single
woman; HAROLD R. WILSON and
STEPHANIE WILSON, husband and wife, and

COMPLAINT
Case No.

010462-11 724451 V1



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

the marital community composed thereof;
MARLIN F. WILSON and ALICE E. WILSON,
husband and wife, and the marital community
composed thereof; NANCY P. WILSON, a
single woman; JOSEPH C. WILTON, JR. and
PAMELA P. WILTON, husband and wife, and
the marital community composed thereof; JOHN
E. WOODCOCK and JOANNA G.
WOODCOCK, husband and wife, and the
marital community composed thereof; BETTY
B. WRIGHT and TERRY L. WRIGHT, wife and
husband, and the marital community composed
thereof; PAUL J. WRIGHT, JR. and NANCY T.
WRIGHT, husband and wife, and the marital
community composed thereof; ROBERT W.
WRIGHT and BARBARA C. WRIGHT,
husband and wife, and the marital community
composed thereof; FREDERICK YOUMANS
and MARY YOUMANS, husband and wife, and
the marital community composed thereof;
DONALD E. YOUNG and NANCY C.
YOUNG, husband and wife, and the marital
community composed thereof; ROBERT C.
YOUNG and NANCY A. YOUNG, husband and
wife, and the marital community composed
thereof; SHEILA I. ZAMBROWSKY, a single
woman; ELEANOR H. ZANIKER, a single
woman; RONALD S. ZIMMERMAN and
JUDITH K. ZIMMERMAN, husband and wife,
and the marital community composed thereof;
NANCY ZYTKOWICZ, a single woman,

                              Plaintiffs,

          v.

SHEA HOMES, INC., a Delaware corporation,

                              Defendant.

COMPLAINT
Case No.

010462-11  724451 V1

HB  HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

**TABLE OF CONTENTS**

<u>Page</u>

I.     INTRODUCTION .................................................................................................1

II.    PARTIES ...............................................................................................................6

       A.    Plaintiffs ....................................................................................................6

       B.    Defendant Shea Homes, Inc. .....................................................................6

III.   JURISDICTION AND VENUE ...........................................................................6

IV.    FACTS ...................................................................................................................7

       A.    The Design, Development and Approval of Trilogy at Redmond Ridge ...............7

       B.    The "Shea Way":  the Manufacturing Process Utilized by Shea at Trilogy ..........10

             1.    Shea Cut Corners on Garage Floors – Shea omitted moisture
                   barriers and capillary breaks on at least 958 Trilogy homes. ...................11

             2.    Shea Cut Corners on Corbels – Shea Omitted Metal Flashing
                   on Corbels and Knee Braces. ...........................................................22

             3.    Shea Cut Corners on Columns – Shea Omitted Water Intrusion
                   Elements on Every Column It Built at Trilogy ........................................27

             4.    Shea Cut Corners on Windows and Doors – It Omitted the
                   Required Head Flashings ...................................................................31

             5.    Shea Cut Corners on Patios – Shea Omitted Flashing at the
                   Patios ............................................................................................34

             6.    Shea Cut Corners on Exterior Walls — Shea Omitted Flashing
                   at the Stone Veneer Wainscoting ........................................................36

             7.    Shea Cut Corners on Decks – Shea Omitted the Flashing at
                   the Deck-To-Wall Interfaces ..............................................................38

             8.    Shea Cut Corners on Drainage – Shea Installed Inadequate
                   Drains and Ventilation in Crawl Spaces ...............................................41

             9.    Shea Cut Corners on Driveways – Shea Poured Slabs Directly
                   Over Wet Soil and During Heavy Rains ...............................................43

       C.    Plaintiffs' Homes at Trilogy Are Defective and Require Extensive
             Repair ...........................................................................................................45

       D.    Shea Knows and Has Known for Years that Its Building Practices Are
             the Cause of the Defects in Homes at Trilogy, Yet it Refuses to Make
             Required Repairs and Instead Requires Homebuyers to Make Costly
             Repairs Under its "Homeowner Maintenance" Rubric ...........................................47

HAGENS BERMAN

V.      EQUITABLE TOLLING OF STATUTES OF LIMITATIONS ......................................49

        A.      Equitable Estoppel ...........................................................................49

        B.      Equitable Tolling ..............................................................................50

VI.     CAUSE OF ACTION  VIOLATION OF THE WASHINGTON CONSUMER
        PROTECTION ACT,  WASH. REV. CODE § 19.86 .......................................................50

VII.    PRAYER FOR RELIEF ...................................................................................51

DEMAND FOR JURY TRIAL ............................................................................52

COMPLAINT - ii

010462-11  724442 V1

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

## I.   INTRODUCTION

1.       A home is the single most important and largest investment for most Americans. Homeowners need to know material facts concerning the quality of their home in order to determine whether they can afford to purchase and to maintain their home.  In the Pacific Northwest, of paramount importance to a reasonable homeowner are facts relating to the care a builder takes to protect the home from the corrosive effects of our region's most dominant weather feature – water.

2.       Water and moisture intrusion are the most serious corrosive and degenerative agents for homes in the Northwest.  It is critical that homes here are planned to withstand water and moisture and are built in accordance with such plans.  A builder must take care that the windows, doors, garages, columns, external architectural features – that all surfaces that are exposed to groundwater or weather—are constructed to account for such exposure.

3.       Code requirements, industry norms in the Northwest, and plans that builders submit to regulatory agencies to obtain building permits are scrutinized to ensure finished construction will withstand our wet climate.  Home buyers expect, and reasonably rely on the premise, that a reputable builder will not deviate from code, industry norms, and its own approved plans when constructing homes for retail sale, especially without notification to buyers of such deviations from submitted plans, codes, and regulatory requirements.

4.       This case arises because defendant Shea Homes, Inc. ("Shea") chose to build and sell over 1,500 homes in the Trilogy at Redmond Ridge development ("Trilogy") that it knew deviated from its architects' and contractors' guidelines, county-approved plans, and recommendations.  Shea intentionally omitted nearly all industry-standard methods for building homes to withstand our wet weather.  And, even after its first homes suffered from various forms of water intrusion due to the substandard construction, Shea refused to tell its customers of the problems and continued building new homes with the same defects.

5.       To increase its profits, Shea consciously cut out crucial weather-proofing methods that all responsible Northwest architects and builders include in their homes.  Shea ignored applicable code requirements, industry norms, and its own submitted and approved plans, all of

COMPLAINT - 1

HB   HAGENS BERMAN

1918 Eighth Avenue, Suite 3300 • Seattle, WA  98101
(206) 623-7292 • FAX (206) 623-0594

1  which required Shea to build homes with metal flashings and sufficient moisture intrusion

2  barriers, drainage, soil compaction, and construction elements for the homes to withstand the

3  Pacific Northwest climate.

4        6.     As detailed below, Shea's own experts, architects, and subcontractors have

5  admitted and confirmed that Shea purposefully omitted King County-required water and

6  moisture intrusion prevention components that were specifically called for in Shea's approved

7  building plans.  Yet Shea never disclosed its purposeful and repeated deviations from the county-

8  approved building plans.

9        7.     Despite knowing that its customers wanted – in fact expected – durable, low-

10  maintenance, trouble-free homes, and despite Shea's own promise to build high-quality homes,

11  Shea omitted telling buyers of at least the following deviations from the county-approved

12  building plans, which have directly resulted in significant water damage, rot, and moisture

13  intrusion that require expensive repairs:

14        A.     <u>Garage Floors</u>:  Shea's approved plans required it to install pea gravel and

15  a moisture barrier under every garage slab at Trilogy.  Shea's Geotechnical Engineering Report,

16  which Shea submitted to the County and was incorporated into its approved plans, required

17  4 inches of pea gravel and moisture barriers under each slab to keep the underground water from

18  migrating through the concrete.  Instead of following those plans, Shea instructed its builders and

19  subcontractors to ignore the plans and Geotechnical Engineering Report and pour the garage

20  slabs directly over the bare, and often wet, dirt at the lot – all to save about $50 per house.  Shea

21  omitted telling buyers that it was deviating from the approved plans in construction of the garage

22  floors.  Lacking the required pea gravel and moisture barrier, moisture from the ground under the

23  slabs seeps up through the garage floors of homes at Trilogy causing odors, mold, deterioration,

24  and the inability to use the garages in a normal and expected manner.  Shea observed the

25  moisture problems on some of its very first homes, but kept building with its defective methods

26  to save a few extra dollars.  In some cases, Shea ordered its subcontractors to pour concrete in

27  the rain and over puddles, knowing the slabs would fail, and knowing it would have to replace

28  the slabs, all in an effort to close the sale before anyone saw the problem.

COMPLAINT - 2

HAGENS BERMAN

B.  <u>Corbels</u> (also known as <u>knee braces</u>):  Corbels are architectural design elements on the exterior of homes that give the appearance of a beam and support passing through a wall.  They are a common element of "craftsman" style homes.  At Trilogy, corbels were designed to be solid wood 4x4 or bigger posts, joined at an angle, and attached to the siding of the house.  Shea's County-approved plans required corbels to be installed with metal flashing to prevent water intrusion and to be attached to the sides of houses with ½" thick lag bolts.  But Shea instructed its builders and subcontractors to ignore these requirements, to nail the corbels to exterior walls with thin framing nails, and not to install metal flashing.  Shea omitted telling any buyers that it was deviating from the approved plans and standard good Northwest building practices for the installation of corbels.  Lacking the required metal flashing and lag-bolt attachments, the corbels on homes at Trilogy are uniformly rotting and falling from the sides of houses.  At various stages of development, Shea observed the failing (and falling) corbels, yet continued to build hundreds more houses with the same defects.

C.  <u>Columns</u>.  Hundreds of Trilogy homes have columns at or near the front doors.  Some columns also support the roof structure.  All are exposed to wind and rain.  Shea's County-approved plans required columns to be built with water intrusion prevention elements such as metal flashing, treated structural support posts, weep screeds at the base to allow for moisture drainage, and concrete pedestals to prevent moisture intrusion from the ground up.  Shea omitted telling buyers that instead of following its plans, it built columns without flashing, without structural supports, without weep screeds, and without any method of preventing moisture from coming up from the ground into the components of the columns.  As with the other omissions, Shea cut these important components out to save a few extra dollars per house.  Shea also built hundreds of homes long after an internal investigation revealed that its defective method of building the columns caused them to rot right "from the beginning" of construction.  As a result of Shea's failure to follow the County-approved plans for columns, the columns are rotting from the top and the bottom.

D.  <u>Windows</u>.  Shea's County-approved plans called for metal head flashings above all windows in its homes.  Contrary to building code and King County requirements, Shea

COMPLAINT - 3

010462-11  724442 V1

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

1   deviated from the permitted plans continuously from 2001 to 2008 by omitting the required

2   metal head flashings above windows.  Shea did this without asking for permission from or

3   informing the King County Building Department.  King County Building Department

4   representative Jane McPherson has testified that eliminating the metal head flashings from the

5   plans "would never have been approved."  Shea's retained expert, Randy Hart, has testified in

6   another case stemming from these same defects that head flashings are industry standard and that

7   he has not designed a building, or recommended construction of a building, without a head

8   flashing above a window or door in at least 15 years.  Shea omitted informing buyers that despite

9   its approved plans, it was not installing metal head flashing above the windows in the homes it

10  was selling.  As a result of Shea's failure to install the metal head flashings above windows as

11  required in its County-approved plans, water is intruding into the window frames in Trilogy

12  homes and rotting the trim and surrounding siding.

13          E.    Doors.  Just as with the windows, Shea's County-approved plans required

14  metal head flashings above its doors.  Shea's own architect testified that window and door head

15  flashings were critical elements of his design given the wet Northwest weather.  Jane McPherson

16  likewise testified that removing door head flashings would not have been allowed by the County.

17  Shea omitted telling buyers that despite its approved plans, it was not installing metal head

18  flashing above the doors in the homes it was selling.  As a result of Shea's failure to install the

19  metal head flashings above doors as required in its approved plans, water is intruding into the

20  door frames in Trilogy homes and rotting the trim and surrounding siding.

21          F.    Patios.  King County building codes require the installation of L-metal

22  flashing where wall siding comes in contact with a patio slab.  Shea's own architect advised Shea

23  not to pour concrete patios against the siding.  Despite this advice, Shea poured all of the

24  concrete at all of its homes directly against the wall siding, and purposefully failed to install the

25  required flashing.  Again, Shea failed to tell its homebuyers that the patios on the houses it sold

26  were poured without the requisite L-metal flashing.  Without the required flashing, water hitting

27  the siding (rain) runs down against the poured patio and causes the wall siding to rot, which is

28  what happened at Shea's model homes, which Shea retroactively fixed with the required L-metal

COMPLAINT - 4

1  flashings.  Shea's expert, Randy Hart, has testified that this defect should be corrected at every

2  home at Trilogy at which it exists.

3         G.     Stone Veneer Wainscoting.  The County-approved and permitted drawings

4  by Shea's architects required the installation of an L-metal flashing along the top of the stone

5  veneer wainscoting and under the Hardiplank or Cemplank wood siding above.  Shea

6  purposefully failed to install the required flashing at all Trilogy homes on which it installed stone

7  veneer wainscoting, and Shea omitted telling homebuyers that the stone veneer wainscoting on

8  the houses it sold were installed without the requisite L-metal flashing.  Without the required

9  flashing, water that makes its way behind the Hardiplank or Cemplank siding or that runs down

10 that siding has no way to escape and causes the wall to rot.

11        H.     Decks.  As with patios, deck installations are required to have L-metal

12 flashing where the decking abuts to the wall siding.  Shea's subcontractors have acknowledged

13 that they knew L-metal flashing was required, but Shea instructed them not to install it.  Shea

14 omitted telling home buyers that it built the decks without the required L-metal flashing.

15 Without the required flashing, water running down the exterior wall remains in contact with the

16 decking causing the siding and decking to rot.

17        I.     Drainage.  Shea omitted required drainage components, ran downspouts

18 straight into the soil rather than connecting them to the required tight-line drain, and failed to

19 correct the problems despite Shea's knowledge of standing water in crawlspaces that caused

20 mold and attracted frogs and vermin, standing water in yards, and resulting damage to homes at

21 Trilogy.  Shea directed its subcontractors to frame over standing water in the crawl spaces, and to

22 install hardwood flooring while knowing the moisture in the crawl spaces would warp the floor

23 and breed mold on the framing.

24        J.     Driveways.  Shea omitted necessary soil compaction and adherence to

25 weather and soil limitations in constructing driveways and, as a result, hundreds of driveways at

26 Trilogy have suffered cracking, spalling, settlement, or other failure.

27        8.     As a result of Shea's reckless and material disregard of the King County building

28 codes, its own consultants, its subcontractors, and its architects, and Shea's failure to disclose

COMPLAINT - 5

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

1   any of these omissions to its customers, Plaintiffs have suffered substantial damages.  They have,

2   for example, garage floors that need pea gravel and moisture barriers, corbels and columns that

3   need replacement, and windows, doors, patios, and decks that need flashing and new trim.

4   Plaintiffs' damages are the direct result of Shea's deviation from King County Code, industry

5   norms, and its own building plans – none of which deviations Shea ever disclosed.

## II.      PARTIES

### A.      Plaintiffs

7

8            9.       Each of the Plaintiffs purchased a home at Trilogy.  The address of each

9   Plaintiff's home, the model of the home, and the year of construction by Shea are listed in

10  Exhibit 1.  Exhibit 1 also lists, for each Plaintiff, the recently discovered defectively constructed

11  elements of such Plaintiff's home.[1]  The expected repair costs for all defects at each home,

12  together with stigma damages based on the known problems with construction at Trilogy

13  resulting from Shea's omissions, and trebled under the provisions of the Washington Consumer

14  Protection Act, exceeds $75,000 for each home and thus for each Plaintiff.

### B.      Defendant Shea Homes, Inc.

16           10.      Defendant Shea Homes, Inc. is a Delaware Corporation.  Shea is registered as a

17  contractor in Washington under License No. SHEAHI*997D1.  Shea is the developer and builder

18  of Trilogy at Redmond Ridge, which is located in King County, Washington.

## III.      JURISDICTION AND VENUE

20           11.      The events and actions alleged herein took place in King County, Washington.

21  The homes which are the subject of this suit are located at Trilogy at Redmond Ridge, which is

22  in King County.  At all relevant times, Shea has been doing business in King County,

23  Washington, and continues to do so to this day.

24           12.      The United States District Court for the Western District of Washington has

25  jurisdiction over this matter pursuant to 28 U.S.C § 1332(a).  Plaintiffs are residents of

26  Washington, and Shea is a resident of Delaware and California.  After trebling under the

27

28  [1] Where more than one Plaintiff has owned a single home (i.e., the home has been sold at least once since it was sold by Shea), all Plaintiffs who have owned such home are listed as owners. *See* Exhibit 1.

COMPLAINT - 6



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

1    Washington Consumer Protection Act, alleged herein, each Plaintiff's damages will exceed

2    $75,000 exclusive of interests and costs.

## IV.    FACTS

3

4        13.    Shea is a national company in the business of building and selling new homes and

5    developing master-planned communities.  Trilogy is one of at least 11 "resort communities" that

6    Shea has developed.

7        14.    Shea has developed and built housing developments across the United States,[2]

8    but, prior to building Trilogy, Shea had never built a development farther north than the 39th

9    parallel (Denver).  Trilogy, in contrast, is above the 47th parallel and thus over 550 miles farther

10   north than any prior Shea development.[3]  Moreover, all of Shea's listed developments prior to

11   Trilogy are in arid, if not desert locales.  Building practices that worked adequately in Shea's

12   other developments would provide no baseline of effectiveness in the comparatively very wet

13   Pacific Northwest.

14       15.    Trilogy is a planned adult (age 55 and over) community of 1,522 single-family

15   "production" homes within 12 divisions.  Division Four is a commercial area and Division Seven

16   is a community center.

17       16.    Trilogy consists of residential homes built in 23 different models, based on square

18   footage and design, each with two or three "elevation" options.  Some of the homes are zero lot

19   line homes, and they share a party wall with an adjacent Trilogy home.

20   **A.    The Design, Development and Approval of Trilogy at Redmond Ridge**

21       17.    Shea retained Mithun Architects, a Seattle-based firm, to serve as lead architect

22   on the Trilogy project.  The partner in charge at Mithun, Bill Kreager, was and is one of the

23   country's leading architects for residential communities, and he has particular knowledge of the

24   primary concerns of the over-55 demographic in purchasing a home.  One primary concern for

25

26

27    [2] Shea's website, www.sheahomes.com, lists developments in the Phoenix area of Arizona; throughout
      California from the Bay Area southward; the Denver area of Colorado; central Florida; Las Vegas, Nevada;
      Charlotte and Greensborough, North Carolina; Houston, Texas; northern Virginia; and the Seattle Area (Trilogy).

28    [3] Each degree of latitude is approximately 69 miles distant from the next.

COMPLAINT - 7

HB HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

those over 55 is a low-maintenance home, which Shea knew from conducting focus groups in the Redmond area before commencing construction.

18.     Even prior to beginning the design of the homes at Trilogy, Mr. Kreager visited Shea projects in Arizona to observe Shea's methods and style of construction.  Upon viewing those Shea communities in the Southwest, Mr. Kreager warned Shea that its Arizona construction methods, which depended on dry weather – including stucco and slab-on-grade construction – were not suitable for home construction in the much wetter Pacific Northwest.

19.     Mithun Architects reviewed climate records for Trilogy before designing a single model.  It learned that the Redmond Ridge area has a particularly wet climate – indeed, it receives 40 inches or more of rain each year on average, as compared with 32 inches in Seattle, and just 8.2 inches in Phoenix.[4]

20.     Because of the wet climate in the Pacific Northwest and particularly wet climate at Redmond Ridge, and its knowledge that Trilogy homebuyers' (55+ in age) would desire low-maintenance homes, Mithun Architects designed homes that included metal flashing on all protruding wood such as at windows and doors and on corbels and columns.

21.     The flashing details in the building plans were extensive and numerous, and *they were included in every model of home that Mithun Architects designed for Shea to build at Trilogy*.

22.     The diagram below is an excerpt for Model 6220, the "Hemlock," which is the most common design built at Trilogy.  At least 240 of the Plaintiffs in this action own Hemlock model homes.  These approved plans show Mithun Architects' intent, and the County's approval requiring, that flashing be installed on the protruding wood features.

---

[4] *See* http://www.currentresults.com/Weather/Arizona/yearly-average-precipitation.php.

COMPLAINT - 8

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594



23.     Mithun Architects' drawings incorporated a soils report prepared by Associated Earth Sciences, Inc. ("AESI"), the geotechnical engineering firm retained to investigate the hydrology and geology at the Trilogy building site.  AESI concluded that the site was suitable for construction *provided its building recommendations were followed*.

24.     AESI's recommendations included the installation of a capillary break (pea gravel) and a moisture barrier (visqueen) under the concrete garage slabs to be poured at Trilogy.

25.     Shea submitted its building plans for Trilogy, including the Mithun Architects' drawings incorporating metal flashing and the AESI report incorporating the capillary break and moisture barrier, to the King County Building Services Division in the Department of Permitting and Environmental Review ("DPER") under the "Basics" program.

26.     The Basics program was set up for larger, more experienced builders who were going to build the same floor plan multiple times.  Basics program plans are reviewed with heightened scrutiny by the Building Services Division because if anything is missed, it could be repeated in each home the builder constructs based on that County-approved plan.

27.     The Building Services Division expects that a builder in the Basics program knows how to build homes in accordance with applicable building code and local industry

COMPLAINT - 9

010462-11  724442 V1

HB  HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

1    standards.  The Building Services Division reviewed Shea's plans independent of the site plan

2    and, once approved, stored the approved plans in its library and cataloged them.

3           28.     For each home building site, a builder in the Basics program could come into the

4    Division with the site plan indicating which plan approved in the Basics program it would use for

5    that specific home site, as well as any additional information that the builder needed to provide

6    to accommodate the site conditions.  In this manner, the Basics program sped up the permit

7    process and Shea used it exclusively in building the 1,522 homes at Trilogy.

8           29.     Once King County had issued the site building permit, Shea was obligated to

9    build *exactly according to the approved plans*.  If Shea wanted to make site-specific revisions,

10   the Basics program had a revision process by which Shea could seek revisions for a specific

11   permit.  Absent an error in the approved Basic plan, site-specific revisions to plans in the Basics

12   library were rare.

13          30.     If a Basics program builder wanted a revision, it had to submit new plans to the

14   Basic program and get a new plan approval from the County, *i.e.*, start the process all over again.

15          31.     As relevant to the facts of this case, for example, Shea's elimination of the metal

16   head flashings that Mithun Architects had specified for every plan at Trilogy was a design

17   revision that required it to submit new plans.  But as Jane McPherson from the Building Services

18   Division has testified in a related case, King County would never have approved such a revision.

19          32.     Indeed, Shea submitted numerous supplemental design sheets during the 12 years

20   of active building at Trilogy to address code-required updates to the plans, but *Shea never*

21   *altered or eliminated from the County-approved drawings the architect's details requiring metal*

22   *flashings* on the homes Shea was building at Trilogy.  All the while, *Shea was building the*

23   *homes without these same required flashings*.

24   **B.     The "Shea Way":  the Manufacturing Process Utilized by Shea at Trilogy**

25          33.     Shea let it be known to Building Services Division personnel that the level of

26   scrutiny that King County required was not what Shea was used to and not how things were done

27   in the Southwest, where Shea had built its prior projects.

28

COMPLAINT - 10

010462-11  724442 V1

HB  HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

34.     Shea challenged virtually every requirement in an effort to reduce its building costs at Trilogy.  It "value engineered" its houses so that, for example, Shea built with the exact minimum number of nails.  It created a climate during construction at Trilogy that encouraged and often required subcontractors to cut corners wherever possible.

35.     Shea's corner cutting at Trilogy became so renowned that its subcontractors, who Shea dubbed "TradePartners," coined the phrase "the Shea Way" to describe Shea's relentless focus on the bottom line, including minimizing construction costs and maximizing the speed at which Trilogy homes were built.

36.     During the course of construction, Shea repeatedly demanded unilateral and immediate price reductions from its TradePartners – by as much as 13% – under threat that if the TradePartner did not cut its price for doing the same scope of work, Shea would put the work back out to bid.

1.     **Shea Cut Corners on Garage Floors – Shea omitted moisture barriers and capillary breaks on at least 958 Trilogy homes.**

37.     Shea began cost cutting at Trilogy right at the bottom with its first homes:  Shea ordered its concrete subcontractors to pour driveways and garage slabs over uncompacted and wet ground without draining the site as the plans required.  It omitted the gravel and moisture barrier that its geotechnical engineer required Shea to install under the garage slabs.

38.     In late 2000 or early 2001, Shea Homes contacted a concrete contractor, Artistic Concrete Design, Inc. ("Artistic") to bid the Trilogy project.  Shea's project manager, Alexander ("Zander") Hawxhurst, contacted Artistic's president, Raymond Harvie, for a pre-construction meeting to do a job walk and discuss the project.  At that meeting, Hawxhurst provided approximately 16 full sets of building plans (drawings) to Artistic.  He asked Mr. Harvie to bid each plan set for turn-key installation of all concrete hardscapes which included:  garage floors, patios, sidewalks, entry, and driveways.  Shea required that each concrete subcontractor's bid include costs for all labor, materials, pumps, tools, and equipment to complete the work.  Artistic's original estimate for the Trilogy project was based on the plans Shea provided and included labor, concrete, any necessary concrete pumps, rebar, moisture barrier, and other materials.  Artistic did not provide

010462-11  724442 V1

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

1    any lot excavations or slab base preparation (*i.e.*, import or export of structural base, or removal of

2    spoils).  These services were provided by different Shea subcontractors.

3         39.    After Mr. Harvie submitted Artistic's bid for the Trilogy at Redmond Ridge project,

4    Hawxhurst told Mr. Harvie to remove from his bid the line items for rebar and moisture barrier.

5    This surprised Mr. Harvie, considering that Artistic had quoted a price of just 15 cents a square foot

6    to install the moisture barrier the plans required.

7         40.    Shea's decision to remove the moisture barrier from the scope of work for the garage

8    slabs caused Mr. Harvie great concern.  At a follow-up meeting with Hawxurst, Mr. Harvie told

9    Hawxhurst that moisture barriers were industry standard here in the Northwest due to the amount of

10   rain, the proclivity of hydrostatic water intrusion, and the underground springs so common in this

11   area.  Hawxurst told Harvie that Shea was not required to install a moisture barrier or rebar under the

12   garage slabs at Trilogy, and therefore, it wouldn't do so, regardless of the local conditions.

13        41.    Mr. Harvie warned Hawxhurst, Ken VanWestrienen, and other Shea representatives

14   about the risks of using Shea's standard Arizona construction practices (*i.e.*, slab over bare dirt

15   foundations and footings, stem wall foundations, no moisture barrier) here in the Pacific Northwest.

16   Mr. Harvie recommended to the Shea group that it listen to the local builders and re-think Shea's

17   building practices to avoid almost certain long term failures.  Despite the advice, Shea stuck to the

18   Shea Way, cutting corners (and costs) wherever possible.

19        42.    As Hawxhurst directed him, Artistic removed all rebar and moisture barrier pricing

20   from its bid package, and Artistic ultimately poured Trilogy garage slabs directly onto bare soil per

21   Shea's instructions.  Shea instructed other concrete subcontractors to bid their work the same way.

22        43.    As Mr. Harvie predicted, hundreds of the Shea Way garage slabs have failed.

23   Lacking the moisture and capillary breaks, the garages suffer from standing water, chemical

24   deposits ("efflorescence"), ugly stains, or all three of these conditions.  The photographs below

25   are Trilogy garages that show the result of pouring the slabs without the required moisture

26   barriers or capillary breaks underneath:

27

28

COMPLAINT - 12

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28









COMPLAINT - 13

HB  HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

44.   Even at houses where Shea attempted to conceal the problem by installing plastic tiles on top of the wet garage floor before selling the home, evidence of the problem is now apparent as efflorescence makes its way up through the joints in the plastic tiles:



45.   Homebuyer surveys completed in 2002 at Shea's request, and recently obtained from Shea's files, demonstrate that Shea knew of the water problems caused by the Shea Way of construction at the beginning of the Trilogy building cycle.  Pursuing cost savings over quality, Shea continued to pour concrete over bare, wet dirt, and ignored its consultant's requirements to keep the garages dry.  Shea simply ignored the County-approved plans.

46.   The following examples, from three different surveys of early Trilogy homebuyers in 2002, show Shea was clearly on notice that its construction was inadequate:

COMPLAINT - 14

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

- "Since living in the home for six weeks, I have found troubling quantities of water underneath the house.  This appears to be due to improper and misdirected drainage set-up."

- "Drainage grades were very poor on lots.  Severe problems with water in crawlspace."

- "Customer service is still trying to fix loose flooring and wet crawl space.  *We have been given several reasons for the wet crawl space.*  Had to pay for an expert to evaluate water drainage problem and have had to remind Shea that the work needs to be done."

47.     The added emphasis immediately above has proved, over the years, to be an important and consistent part of Shea's strategy in responding to Trilogy homebuyers and prospective homebuyers who called out the water issues in homes at Trilogy.  Shea concocted a string of false explanations as to why its homes were exhibiting atypical problems for new homes, particularly given that they were built and marketed as high-quality and low-maintenance.  Shea would, for example, tell homeowners that water coming up through the garage floor was "typical" of the Northwest, or that efflorescence was a consequence of concrete "curing."  Shea also developed internal "scripts" for its personnel to use with homeowners to explain away these various defects and resulting problems, all while failing to disclose that it knew exactly what the real source of the problem was:  the Shea Way.

48.     One of the first Trilogy buyers who noticed water in their crawlspace and a wet garage floor contacted a drainage contractor, Bodine Construction, to assess the drainage at their new Trilogy home.  Bodine found extensive problems with the drainage and prepared reports documenting the issues.  In January 2003, Shea contacted Bodine:

COMPLAINT - 15



HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

----- Original Message -----
From: "Jason Sandobal" <jason.sandobal@sheahomes.com>
To: <info@bodineconstruction.com>
Sent: Tuesday, January 07, 2003 6:19 PM
Subject: Information

> Hello,
>
> My name is Jason Sandobal, I am the Customer Service Manager here at
Trilogy
> at Redmond Ridge.  I received your the name of your company from some
> homeowners out at our community.  Mr. Al Novak, Dr. Backlund and Mr. Kevin
> Shin speak very highly of your company.  Through your past visits to our
> community, you have assessed a few of our crawl spaces.  I have read your
> reports and find them very thorough and informative.  I am presently
looking
> for a "third-person expert" to come in to inspect already completed crawls
> and maybe to also provide some corrective work.  I would like to obtain
> information on setting up a meeting to discuss this opportunity.   Who
> should I contact and what is the best number to reach someone at?  Thank
you
> for your consideration.
>
> Jason Sandobal
> Customer Service Manager
> Shea Homes for Active Adults Washington
> (425) 216-1341

49.     Steve Bodine met with the Shea team.  He also forwarded them a basic article on

drainage for their edification:

Jason,

As I was reading this, I thought of your "team".  This article may provide some insight
to some issues.   Maybe you're already aware of some of these things but thought it
couldn't hurt to pass it along to you.


Thanks,

Steve Bodine

Bodine Construction Co.



HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

*Assessment:   Crawlspace*
*A)* During my evaluation on May 6, 2003, weather conditions are sunny.  Rainfall the last week has been moderate.  Viewed was the presence of standing water, mostly puddles, with approximately 2 inches of standing water and with evidence of up to 3 inches of past flooding.  Water was present both above and below the vapor barrier.  *B)* The below grade downspout drain pipe (roof drains) was flow

50.    Shea ultimately hired Bodine to perform drainage inspections on over 100 homes at Trilogy in 2003.  Bodine found numerous problems and provided Shea with written reports complete with color photographs.  Bodine determined that even the clubhouse at Trilogy required over $40,000 in drainage remediation work well after it was completed.  Bodine's inspections revealed several inches of standing water in crawlspaces, a lack of pea gravel, and other defects, including in a home that Shea currently had on the market.



51.    Shea never disclosed any of these conditions to prospective Trilogy buyers, and never told any prospective buyers or owners at Trilogy that, despite the known, wet conditions

COMPLAINT - 17

010462-11  724442 V1



on Redmond Ridge both above and below ground, it had directed its concrete subcontractors to omit the engineer-required pea gravel and moisture barrier from their scope of work in pouring the garage slabs.

52.     To the contrary, Shea promised that its foundations systems were "engineered for local soil types to ensure greater structural integrity," and that it took extra steps to ensure proper drainage:

> To ensure proper drainage in the crawlspace, Shea Homes installs footing drains surrounding the house and a French Drain system (or low point drain), inside the foundation walls. We then lay 3-4 inches of drain rock on the finish grade and a vapor barrier on top of the drain rock.
> This engineered foundation will provide you with the added confidence that your Trilogy home is solid from the ground up.

53.     Early in 2003, as Shea's recently disclosed internal files revealed, Shea customer service personnel – who were either unaware of Shea's omission of the moisture barrier and pea gravel under the garage slabs or were directed by their superiors to search for an excuse – began researching the possible cause of water intrusion and efflorescence on the garage floors at Trilogy.  They obtained a concrete industry article that indicated the likely source:  lack of moisture barrier and capillary break.

54.     Rather than reveal the problem to homebuyers or change its construction practices (adding perhaps $50 to the cost of each home for the plastic and gravel), Shea began concocting false explanations.  In early 2005, Shea wrote to multiple homeowners:

> Recently, it was brought to the Shea Homes Customer Service Department attention your concerns regarding your garage floor. During our recent weather change we received some calls during a 48-hour period of time from homeowners with noticeable moisture on their garage floors.
>
> We appreciate your patience while we researched the cause over the last week. The following assessment was made after on site trade professionals as well as outside research was done to determine the cause.

COMPLAINT - 18

HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

55.     Instead of coming clean and admitting the true source the problem, Shea blamed the wet garage floors on a change in the temperature:

> The large and sudden temperature change causes condensation to occur. Sudden change left a temperature difference between concrete and air. According to *Concrete Construction (August 1997)*, "Warm air holds more moisture than cold air. When the temperature increases rapidly, the concrete temporarily remains colder than the air, causing moisture in the air to condense on the floor."
>
> As you may have noticed your floors have begun to dry out. With the information provided and research Shea Homes does not feel there is a defect in product or installation present. If you have any questions regarding any of this information please do not hesitate to contact the Shea Homes Customer Service Department at 425-836-2379.

56.     Shea had not actually obtained or read the referenced article, but instead copied the reference from a Yahoo search result for "wet garage floors," which was intended in answer to a question about wet garage floors after a drop in temperature in Louisiana:

**YAHOO!** SEARCH                                    Help - Help for Webmasters

« back to results for "wet garage floors"

Below is a cache of http://www2.worldofconcrete.com/ThisMonth/ProbClinic.asp?
ProbClinicID=c9706658b&PubID=1. It's a snapshot of the page taken as our search engine crawled the
Web. We've highlighted the words: **wet garage floors**
The web site itself may have changed. You can check the current page (without highlighting).

*Yahoo is not affiliated with the authors of this page or responsible for its content.*

   There's more than one way to carve up a road with a STIHL.  Visit Booth #C1635.  www.stihlusa.com/chopper

 WORLD OF CONCRETE: 1-e

**World of Concrete**          Tuesday, December 28, 2004

**World of**                   **Correcting a Wet Garage Floor**
**Concrete's**                 Question
**Producer Center**

**World of Masonry**           I live in Louisiana. Many times my garage and shop floors become very
                               wet and slippery during the winter, when the air temperature changes
**Exhibitor List**             quickly from cold to warm. What can be done to concrete floors to
                               prevent this from happening? I'm also installing a new shop floor and
**Seminars**                   would like to know what can be done during construction to prevent this
                               problem.

|x| WORLD OF  __ __.           Answer

HB  HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

57.     A short time after Shea provided that inaccurate explanation to Trilogy homeowners, Shea representative Ella Montgomery contacted its Arizona concrete contractor, Jim Bebout, regarding the garage floor problem at Trilogy.  Mr. Bebout's response was straightforward:

> Ella,
> When slabs are wet, it is typically due to the presence of hygroscopic water under the slab being wicked through the slab. This water could have been there from rains, pad pre-soaking or high water table or snow melt levels. At any rate, most concrete mix designs are relatively porous and are susceptable to "wicking" free water through tiny slab capillaries to create a moist slab condition throughout the slab and its surface.
> If the slab is wet and there are visible signs of moisture present, theres really no need to throw money away on moisture testing, that will just tell you what you already know.
> The focus would then shift to moisture abatement.

58.     Mr. Bebout went on to describe the only two methods of dealing with the problem, and both methods require removal of the garage slab.  He also wrote:

> What is particularly odd about your condition is the moisture being  present in the garage... where there is no sealed environment. Wicking of free water or vapors is most common in the livable area of the house where the conditioned area is under a low pressure environment and the moisture under the slab is under a high pressure environment. This condition leads to moisture being drawn into the slab in a wicking affect.
> In a garage area, the space is not conditioned and should not be conducive to "pulling" the water up through the slab......this leads me to believe youre dealing with poor drainage conditions and or very high water table coupled with poor drainage away from the slab.
>
> It should be noted the slab can be sealed, however, our experience with this has been poor. The cost to seal a wet slab is much more cost prohibitive than removing and replacing the slab. Particularly given the size slabs youre dealing with.

59.     Nevertheless, more than a year later, Shea was still building garage slabs without the required moisture barrier and capillary break (even though it had already been forced to replace a few slabs and install these omitted construction elements).  And, as a recently obtained internal Shea document demonstrates, Shea was even considering using a sealer despite its own Arizona concrete subcontractor having advised against it:

> •   Garage Slab replacements this continues to be an issue.  Any suggestions here would be greatly appreciated.  We are looking at a sealer, but don't have any evidence that it works.  We have replaced slabs and it is really snowballing.

60.     Without justification, Shea refused to repair or replace its defective garage slabs. Instead, Shea used a widely discredited calcium chloride test for water transmission through the slab, but told homeowners: (1) that the test could only be performed in the dry months; (2) that

COMPLAINT - 20



HB HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

the test results could not be shared with the homeowner; and (3) that the test result was just "one of several factors" that Shea considered in deciding whether a particular garage slab should be replaced.  All the while, Shea was building homes on sites so wet that—even in summer months like August—they contained deep standing water as in the photograph below.



61.     Finally, on October 3, 2006, Shea began installing moisture barriers under garage slabs on the homes it was building at Trilogy.  But by that time, Shea had built 958 Trilogy homes without the required moisture barrier or drain rock.  To date, Shea has replaced 101 garage slabs, installing moisture barriers before re-pouring those slabs.  But 871 defectively constructed and installed garage slabs remain at Trilogy.  Each homeowner was subject to the same omission by Shea, namely it omitted to tell them that the garage slabs were not constructed and installed according to the County-approved plans and soils report.  And each homeowner has suffered the same result:  water and efflorescence percolate through their garage slab.

62.     At least 388 of the Plaintiffs in this action have garage slabs defectively

COMPLAINT - 21

HB   HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

1    constructed without drain rock and moisture barriers.

2        **2.    Shea Cut Corners on Corbels – Shea Omitted Metal Flashing on Corbels and
             Knee Braces.**

3

4        63.    Certain models of Trilogy homes, including at least 70 of Plaintiffs' homes, have

5    knee braces and/or corbels.  A knee brace extends off the house with a horizontal, 6"x6" timber

6    supported by a vertical member flush against the house and an angled member creating a

7    triangle.  A corbel or outlooker is the horizontal member by itself.  (Sometimes the terms

8    "corbel" and "knee brace," are used interchangeably.)  Both corbels and knee braces can be seen

9    in this photograph of a Trilogy home:

10



11

12

13

14

15

16

17

18

19

20

21

22

23        64.    In the photo, there is a knee brace in the foreground and another at the peak of the

24    roof below the fascia.  There are several corbels that run across the top of the garage.  Although

25    corbels and outlookers may look good from ground level to unsuspecting Trilogy home buyers

26    and owners, Shea omitted the required metal flashing from atop knee braces and corbels at

27    Trilogy from 2002 to 2012.  As a result, regardless of how well a homeowner maintains their

28    home, the corbels and knee braces rot.

COMPLAINT - 22

010462-11  724442 V1



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

1    65.    The four photographs below are from one Trilogy home shortly before and during
2    the removal and replacement of the knee braces and corbels:



66.    Trilogy home buyers Bill and Diane Fehr had to replace the corbel shown in the
photo below and numerous others at their Trilogy home after Shea had "repaired" them once
already, and despite the Fehrs' regular maintenance of their home's exterior:

COMPLAINT - 23

010462-11  724442 V1

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



17
18
19
20
21
22

        67.    An internal Shea document recently obtained shows that in August 2009, Shea

calculated its "Exposure by Plan" for each of the home plans (models) at Trilogy based on its

omission of the flashing from the corbels and knee braces.  Shea calculated that the cost of

replacing those components on the 671 homes that it had built by that time was in excess of $1.4

million.

23
24
25
26
27
28

COMPLAINT - 24



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

| Plan | Small Corbel | Large Corbel | Small Knee Brace | Large Knee Brace | Total | Count | Exposure By Plan |
|---|---|---|---|---|---|---|---|
| 2 | $ 60 | $ 80 | $ 160 | $ 250 | | | |
| 2040C4 | | | | 13 | $ 3,250 | 11 | 35,750 |
| 2050C | | | | 11 | $ 2,750 | 9 | 24,750 |
| 2050C2 | | | | 11 | $ 2,750 | 3 | 8,250 |
| 2050C2F | | | | 11 | $ 2,750 | 1 | 2,750 |
| 2050C4 | | | | 11 | $ 2,750 | 4 | 11,000 |
| 3320A | | | | 3 | $ 750 | 46 | 34,500 |
| 3330A | | | 2 | | $ 320 | 17 | 5,440 |
| 3340A | | | 2 | | $ 320 | 28 | 8,960 |
| 4050A | | | | 1 | $ 250 | 30 | 7,500 |
| 4050C | | 9 | | | $ 720 | 22 | 15,840 |
| 4060B | | 4 | 4 | 4 | $ 1,960 | 23 | 45,080 |
| 4060C | | 3 | | | $ 240 | 65 | 15,600 |
| 4081A | | 9 | | | $ 720 | 18 | 12,960 |
| 4081B | | 2 | | 1 | $ 410 | 44 | 18,040 |
| 4091A | | 1 | | 4 | $ 1,080 | 15 | 16,200 |
| 4091B | | 9 | | | $ 720 | 31 | 22,320 |
| 4091C | | 3 | | 2 | $ 740 | 24 | 17,760 |
| 6220C | | 3 | | 26 | $ 6,740 | 97 | 653,780 |
| 6230C | | 8 | | 16 | $ 4,640 | 17 | 78,880 |
| 6240C | | | | 15 | $ 3,750 | 15 | 56,250 |
| 6250C | | | | 22 | $ 5,500 | 6 | 33,000 |
| 6510B | 7 | | | | $ 420 | 31 | 13,020 |
| 6530A | 15 | | | | $ 900 | 5 | 4,500 |
| 6540A | | 3 | | | $ 240 | 15 | 3,600 |
| 6540B | | | 8 | 4 | $ 2,280 | 14 | 31,920 |
| | | | | | | 671 | 1,442,150 |

68.     Despite having to replace rotted corbels on its model homes, and intentionally omitting the structurally required ½" lag bolts, Shea continued to build homes with unflashed corbels and knee braces until 2012, and all the while Shea told homeowners that their rotting corbels were due to a lack of adequate "homeowner maintenance."  On the model homes that Shea repaired and then sold to unsuspecting buyers, Shea asserted in an internal document that the rotting corbels would be attributed to "homeowner maintenance" after the sale.  As with all its omissions, Shea never disclosed to any buyer the deviations from approved plans.

69.     Rotted corbels and knee braces have fallen off of several Trilogy homes.  Shea even secretly replaced one such fallen corbel, using a work crew that Shea specifically instructed

COMPLAINT - 25

HB   HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

1   not to wear the Shea-standard, blaze orange work shirts.  Shea was so intent on hiding its need to

2   repair the failing corbels that it took great pains to deceive the Trilogy homeowners so they

3   wouldn't learn that the failing corbels were not a "homeowner maintenance" issue but rather

4   were a problem of Shea's own making.

5         70.    As Shea discovered more and more rotting corbels between 2009 and 2011, it

6   looked for ways to limit its potential $1.44 million "exposure."  Shea settled a pending class

7   action lawsuit involving only failing and moldy paint, known as the "Gaines Litigation" or

8   "MOTH (Mold on the Houses) Litigation." It then claimed that it had intended to include all

9   possible construction defect claims within that limited settlement.  After settling the paint case,

10   Shea personnel circulated an internal email dated October 24, 2011 which, after studying the

11   plan to contend it had settled all possible defect claims, concluded that the Gaines settlement

12   *could not be interpreted* so as to include the rotting corbels and columns.

13         71.    Nevertheless, Shea personnel – including Area Vice President Richard

14   Obernessor, in June 2012 – advised Trilogy homeowners *after the October 24, 2011 email* that

15   any claims regarding rotted corbels were barred by the prior class action settlement.  Indeed,

16   Trilogy homeowners Bob and Gwen Blough received that explanation from Patti Conrad of Shea

17   in a letter dated May 31, 2012:

18   Dear Mr. & Mrs. Blough:

19   Thank you for your recent correspondence.  We understand you request repairs to your
20   exterior decorative wood corbels.  We do not believe Shea's warranty covers this
21   condition as it is homeowner maintenance.  In addition, by participating in the Gaines
     settlement and release, you have discharged Shea from making these types of repairs.

22   Best regards,

23

24   Patti Conrad
25   Shea Homes

26

27

28

COMPLAINT - 26

010462-11  724442 V1



72.     And Shea made the same, false assertion in a subsequent legal action, *Blough, et al. v. Shea Homes, Inc.*, both in arbitration in December 2012 and in its failed Motion to Dismiss filed in that action in July 2013.

**3.      Shea Cut Corners on Columns – Shea Omitted Water Intrusion Elements on Every Column It Built at Trilogy**

73.     The architect's plans required flashings on the tops of columns to prevent water entry, and weep screeds at the bottom to allow any water that entered the column to escape. These elements are essential to prevent rot.  Omitting either component will lead to water damage.  Nonetheless, consistent with the Shea Way of doing business, Shea omitted flashing on most columns and omitted the weep screed on every column at Trilogy.

74.     After seeing many of the columns fail and repairing its own model homes, in 2007 Shea quietly investigated the cause of the failing columns on numerous homes at Trilogy. It inspected homes without informing the homeowners so as not to arouse concern.  Shea concluded that "water is penetrating the cavity of the column in several ways.  This has [caused] and is currently causing damage to the different building materials used in the construction of the column."  The report's author also wrote, "I noticed that the footing or base of each column sits below the flatwork of the home.  This is a major concern that will cause water to penetrate from the bottom up.  The column base should be set above flatwork just as porch columns are done in a typical installation practice."

75.     The report noted that the columns had been rotting from the inside out, that this process likely began "soon after installation of the building materials," and that "all materials will eventually erode and challenge these areas as time moves forward."  The author questioned whether the information should be shared with Trilogy owners.  Not surprisingly, Shea kept the report and its findings a secret.

76.     In 2009, an internal Shea email by Shea's area vice president acknowledged "a struggle on the columns from the outset" of the project.  And in 2011, an internal Shea email acknowledged that columns were not built to plan and noted, "It states clearly on the plans that

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

the plan is for the architectural design and that flashing and weatherproofing are the responsibility of the contractor."

77.     Despite this clear knowledge, Shea advised Trilogy homeowners that the column failures were a "homeowner maintenance" issue.  Here is an example of just one Trilogy homeowner's problems with her columns, in spite of the fact that she *regularly and properly caulked and painted per Shea's recommendation*:



78.     A close-up of the column shows it was well-painted and caulked:



COMPLAINT - 28

010462-11  724442 V1

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

79.     The well-maintained caulk and paint hid the ugly truth that only Shea knew:

 



COMPLAINT - 29

010462-11  724442 V1

80.     The column was built without a weep screed, and there is no concrete supporting the framing.  As a result, the entire column, like every other column at Trilogy, must now be replaced.



81.     The same condition can be found upon opening columns throughout Trilogy, including at many other Trilogy homes such as this one:



HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

82.     As with corbels and knee braces, Shea replaced failed columns on its own model homes before selling them, but it never revealed this problem to its customers.  Instead, corporate policy required its customer service representatives to tell the future owners, and all other Trilogy homeowners, that the water problems were attributable to "homeowner maintenance."

83.     Shea never disclosed its knowledge that columns throughout Trilogy were rotting from the inside because of the corners Shea cut in construction.  Shea chose to continue building the inherently defective columns, knowing the problems would not reveal themselves until after the one-year warranty period ended.  At that point, Shea could and did blame the problems on "homeowner maintenance" without ever revealing that it had omitted key construction components and that it knew the columns had been rotting from the date they were built.

**4.     Shea Cut Corners on Windows and Doors – It Omitted the Required Head Flashings**

84.     The architect's plans for Trilogy approved by the County included several details requiring a head flashing above all windows and doors such as the one shown above in Paragraph 25 from the Hemlock plans.  The architect had contemplated flashings on all windows and exposed trim from very early on, including in a letter to Shea dated May 22, 2001 which included, among recommended specifications:

Flashing at all detail trim and at window heads

85.     Shea's own, subsequent specifications for the project dated October 8, 2001 likewise called for these flashing details to be followed:

Flash all windows per plan details

86.     And the window manufacturer, Milgard, also provided Shea with installation standards that include a head flashing, but Shea rejected it, as evidenced by a document obtained from Shea's internal files:

COMPLAINT - 31



HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

1
2
3
4
5
6
7
8



87.    To save a few bucks per house, however, and rather than build the homes at

9
10
11
12
13
14

Trilogy as required by: (1) the architect; (2) the County; (3) the building code; (4) the window

manufacturer; and (5) even its own specifications, Shea simply omitted the 26-gauge metal

flashing and eliminated the 2x4 trim above the windows during the first seven years of

construction at Trilogy and into 2008 – by which time Shea had sold the large majority of homes

and reaped the profits from its deceptive practices.

88.    Shea's siding contractors, just like Shea's concrete contractor, urged Shea to

15
16
17
18
19
20

follow the plans and install the necessary flashings.  As with the other advice it received, Shea

ignored it and instructed its siding contractor to run the horizontal lap siding right up to the

windows and doors and then slap cheap 1x4 white wood on top of the siding as "trim."  As a

result, water makes its way behind the trim causing rot damage to the trim and siding from the

inside that is hidden from the unsuspecting Trilogy homeowner.

89.    Only several years later, when the rot has made its way to the exterior of the trim,

21
22
23
24

does a homeowner learn the consequence of Shea's omission of the head flashings.  Here is a

window on one Trilogy home, and you can see that water has made its way behind the trim and

is coming out the bottom:

25
26
27
28

COMPLAINT - 32

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

010462-11  724442 V1

1
2
3
4
5
6
7
8
9
10
11



12    90.    This water intrusion leads to unseen rot, such as on this Trilogy home:

13
14
15
16
17
18
19
20
21
22
23
24
25



26    *Trim showing decay and fungal growth*          *Backside of removed trim*

27
28

COMPLAINT - 33

HB HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

010462-11  724442 V1

91. The same condition reveals itself around unflashed doors, all as a result of Shea's omission of head flashing:




*Rot discovered under paint*                    *Close-up of rot at door trim*

92. Shea's own expert has acknowledged under oath that Shea omitted head flashing above doors throughout the project.

**5.    Shea Cut Corners on Patios – Shea Omitted Flashing at the Patios**

93. At every home at Trilogy, Shea omitted the flashing at the patio-to-wall interface, and instead Shea poured concrete directly against wood siding. This was in violation of the building code, industry standards, and the architect's recommendations.

94. In 2002, the architect provided a Shea-requested detail but specifically noted that Shea's plan to pour the patios against the wood rather than the foundation was *not recommended*:

> The porch/patio merely shows the location of the adhesive water resistant membrane. This is not our recommended detail. We prefer the top of the foundation wall held up to align with the porch slab.

COMPLAINT - 34

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

010462-11  724442 V1

95.     Shea's subcontractors likewise urged Shea not to pour concrete patios against the wood and to install an L-metal flashing.  But Shea omitted the flashing.  The patios poured at Trilogy "pull" the house down when settling, such as what occurred at this Trilogy home:



96.     And Shea's failure to install an L-metal flashing also means that water makes its way down between the patios and the wood, which leads to damage such as at this Trilogy home:



97.     As with corbels, knee braces, and columns, Shea replaced damaged wood due to missing patio-to-wall flashing on one of its own model homes before selling it.

COMPLAINT - 35

010462-11  724442 V1

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

6.      **Shea Cut Corners on Exterior Walls — Shea Omitted Flashing at the Stone Veneer Wainscoting**

98.     Shea omitted flashing where the stone wainscoting meets the wood trim above.

99.     The photograph below depicts an example of the stone veneer wainscoting on one home at Trilogy:



100.    The architect's drawings approved by King County required the installation of a flashing at the wainscoting:

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594



101.    Shea failed to install the required flashing on 851 Trilogy homes.  And Shea failed to acknowledge its omission even when homeowners such as this one raised concerns:

We also have some concerns about water getting around the brick work and another issue there.  I would like to show you or someone while the weather is hot.  It may need caulking or something or we are going to have a moisture/mold issue.

102.    The lack of flashing above the wainscoting prevents water from draining away from the wall, allowing water to remain against the wood behind the impermeable wainscoting materials and causing rot behind and above the wainscoting.  The photo below is of a Trilogy home with rot – including visible mushrooms growing – atop the unflashed wainscoting:

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

1
2
3
4
5
6
7
8
9
10
11
12
13



14   **7.      Shea Cut Corners on Decks – Shea Omitted the Flashing at the Deck-To-Wall Interfaces**

15   103.     The approved plans for Trilogy required a water resistant membrane to be

16   installed where the decks meet the house.  This requirement was in the original drawings for

17   Trilogy and all modified versions:

18
19
20
21
22
23
24



25   104.     A similar detail was included in the permitted drawings for individual decks built

26   by Shea at Trilogy after original construction, such as this detail from Lot 1165 at Trilogy which

27   clearly shows that flashing is required:

28

COMPLAINT - 38

1
2
3
4
5
6
7
8
9
10
11



12      105.    Shea built the decks at Trilogy directly against the siding and/or wood trim, like at

13  the Trilogy home shown here:

14
15
16
17
18
19
20
21
22
23
24
25

26      106.    If installed, the flashing allows water to escape from behind the siding onto the

27  deck while also preventing water from making its way down into the deck-to-wall joint, where it

28

COMPLAINT - 39

HB HAGENS BERMAN

010462-11  724442 V1

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

can cause rot.  That z-flashing is required if the deck is not built at least two inches below the siding, as required by the building code, the siding manufacturer, and standard good building practice:



Maintain a minimum 2" clearance between James Hardie® products and decks, paths, steps and driveways.

**Figure 4**

2" min.

107.    When homeowners inquired about the missing flashing, Shea misrepresented its obligation to install such flashing.  For example, one new Trilogy homeowner wrote to Shea in 2012 expressing several concerns with her deck, including the missing flashing:

> I noticed there is no mention of the flashing that is missing where the deck is attached to the house.  The bolts are just screwed right into the siding on the house.  Flashing is definitely needed.  I assume you will also be fixing this so I don't have any eventual water damage from the rain water getting in behind and under the siding.

108.    Patti Conrad of Shea responded to her with this inaccurate statement:

> We also did not install the flashing as it was not required as part of the deck building

109.    As a result of Shea's omission of the required flashing at the deck-to-wall interface, water damages Trilogy homes at that interface.  The photograph below shows an example of the rot damage that results and that can go unseen for years under the exterior paint:

COMPLAINT - 40

010462-11  724442 V1

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594



8.   **Shea Cut Corners on Drainage – Shea Installed Inadequate Drains and Ventilation in Crawl Spaces**

110.   As noted above, Shea had extensive knowledge very early on in its construction of Trilogy that its home sites had inadequate drainage, that homes suffered standing water in the crawlspaces and yards, and that as a result of the moisture many homes suffered hardwood floor damage including cupping, warping, and separation.  Shea agreed to replace numerous hardwood floors at Trilogy (while denying the existence of a problem or any liability to other Trilogy homeowners), and when in 2006 Shea tried to blame its flooring supplier, Superfloors, Shea got a swift rebuke from Superfloors explaining the problem again, as it had previously:  moisture.

It is not the quality of the product causing this his issue it is moisture trapped in his floor. I have given you the Wood and Water book twice. Pages 19, and 20.

I strongly encourage Shea to place fans under this house to prevent any new moisture issues and to help install a higher confidence level in the home owner. I was happy to see that you are moving forward with a dehumidifier. This will also insure that the sub floor will be at the proper moisture level to prevent this from happening again.

111.   Shea ignored the advice and did nothing to address the moisture problems.  It should have been no surprise to Shea when, a year later, Superfloors submitted an independent

COMPLAINT - 41

010462-11  724442 V1



inspector's report to Shea regarding another Trilogy home with moisture problems and failing

floors. The inspector's conclusions were the same:

> There must be enough ventilation under the house to move the moisture. The minimum that is recommended for hardwood flooring to be stable for a 2,400 square foot area is 36 square feet, but there was only 13.23 square feet installed. At sometime there must have been a lot of moisture under this house, because the moisture content in the joists, beams and posts, as well as the relative humidity were too high. There is only one thing that causes hardwood to move post-installation and that is moisture. Moisture is either going into the wood (causing swelling) or it is leaving the wood (causing shrinkage).

112.    Shea still concealed and refused to acknowledge that it had caused the problems

by refusing to spend the money necessary to install the proper drainage at Trilogy. Shea

continued this ruse for years, including two years later when, in 2009, Shea made an insurance

claim to recover the costs of replacing that very floor due to the moisture damage. Shea

represented to its insurer that the floor was damaged during other repair work:

Last Name: Stoddard    First Name: Mark    Middle Name:
Community: TRR    Home site: 8088    Close of Escrow: 3/31/06
Address: 11834 Big leaf WAYNE    City: Redmond, WA.    Zip Code: 98053

Cause of Incident: Tiles on kitchen countertop did not match & had to replace countertop. During repairs/replacement sink, cabinets, walls & floors were damaged & had to be repaired.

Payee: ☑ Shea Homes    ☐ Other:    Tax ID:
(For Non Shea Payee)

Amount Requested: $ 17,834.06

Reason for payment to other than Shea:

113.    Shea made numerous other insurance claims and recovered money for hardwood

floors Shea replaced due to excessive moisture, while at the same time Shea was telling other

homeowners that it was not responsible for their floor problems.

114.    Shea installed crawlspace fans in various homes but concealed the real reason for

having done so. Shea even prepared a script ("external conversations") for customer service

representatives ("CSRs") to use in explaining the crawlspace fans to homeowners, with a

separate, explanatory section ("internal information") for the CSRs' eyes only that has

contradictory information and demonstrates that Shea's representations to owners were

intentionally deceptive.

COMPLAINT - 42

HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

115.    Shea has continued its unfair and deceptive practice regarding its omitted drainage and damage right through to 2014, professing to have no knowledge of ongoing drainage problems at Trilogy.  Patti Conrad, a Shea CSR, wrote to Plaintiff Jim Green in 2014, concocting a slew of false reasons for the problems with moisture and hardwood floor failures at Trilogy homes.  Wrote Ms. Conrad:

> As a builder, Shea Homes cannot control over what has occurred over the many years the home has been occupied, specific to weather conditions, additional hardscaping in the back of the home, augmented landscaping and the natural movement and evolution of the protected wetland directly behind this home.

116.    By the time Ms. Conrad of Shea wrote this in April 2014, Shea had known for 12 years that its defective drainage saturated the ground under and around the Trilogy homes.  The virtual ponds below the hardwood floors were breeding grounds for mold and damaged the floors, such as occurred at the Greene home and many other plaintiffs' homes.

**9.      Shea Cut Corners on Driveways – Shea Poured Slabs Directly Over Wet Soil and During Heavy Rains**

117.    Shea poured driveways at Trilogy on uncompacted, wet soil, and as a result driveways are failing in multiple divisions throughout Trilogy.  Shea knew that its methods of construction were causing driveways to fail as far back as 2003, as indicated by a homeowner's email to Al Seaton of Shea:

**Albert Seaton**

| | |
|---|---|
| **From:** | DeeganRL@aol.com |
| **Sent:** | Tuesday, November 25, 2003 9:38 AM |
| **To:** | Albert Seaton |
| **Cc:** | karinp@windermere.com |
| **Subject:** | 3009 |

Al:

The front sidewalk, entry patio, and top half of driveway were poured last week in the very heavy rain storm. The contractor did not adequately cover the new concrete to protect it from the elements. As a result, there are several areas that have incurred significant surface erosion, leaving a very rough and uneven surface. This needs to be repaired.

Roger

118.    Just as it refused to compact the soil below the garage slabs and drain the crawl spaces before building, Shea refused to alter its faulty construction practice.  As a result, the aggregate on the driveways spalls, as it has here at the home of Plaintiff Joan Myers:

COMPLAINT - 43

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

1
2
3
4
5
6
7
8



9      119.    The failing, spalling driveways built by Shea lead to pooling water and further
10
failure.  Failed aggregate pours into gardens, curb gutters, and storm water outfalls.
11
12
13
14
15



16
17
18
19
20
21
22      120.    Shea replaced only a select few failed driveways, even making insurance claims
23
to recover the monies it spent correcting its own defective work:
24
25
26
27
28

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

1

## J.F. SHEA HOMES CLOSING REPORT
Submit to AIGDC with final bills and Homeowner's release

Date: 1/26/2010

M NUMBER 683-320110

Leave blank if unknown

unity Type: ☑Shea  ☐UDC

owner information:

ame: Scheunemann  First Name: Art  Middle Name: C.

unity: TRR  Home site: 9120  Close of Escrow: 4/27/2007

ss: 13705 Morgan Dr. NE City: Redmond  Zip Code: 98053

of Incident: Joint driveway was holding water in middle of driveway due to grade setting. Had to tear out driveway, regrade and pour new driveway.

☑Shea Homes  ☐Other:  Tax ID:
(For Non Shea Payee)

Requested: $ 17,286.13

121.    True to the Shea Way, Shea continued to tell homeowners, including Plaintiff Joan Myers and others, that the driveways were within industry standards, while at the same time Shea customer service personnel mocked Trilogy homeowners, in internal emails, for their "driveway envy."

**C.    Plaintiffs' Homes at Trilogy Are Defective and Require Extensive Repair**

122.    Every one of the more than 1,000 homes inspected prior to the filing of this lawsuit, including all of Plaintiffs' homes, has at least one of the defects described above.  Most homes, including hundreds of Plaintiffs' homes, have many or all of the defects, and as moisture and water continue to penetrate the construction at Trilogy, additional defects are currently being exposed.

123.    As set forth for each Plaintiff in Exhibit 1, each Plaintiff's cost of repair and stigma damages to their property value is expected to exceed $25,000.  Treble damages as allowed under the Washington Consumer Protection Act, RCW Ch. 19.86, bring each plaintiff's total damages to in excess of $75,000, exclusive of interest and costs.

124.    Shea has admitted that for all 958 Trilogy homes at which the garage slab was poured prior to October 3, 2006, Shea failed to install those garage slabs in the manner required by its geotechnical engineer; namely, Shea omitted the moisture barrier and capillary break that

COMPLAINT - 45

010462-11  724442 V1



HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

1    was to be installed prior to pouring the slab.  Some homes have multiple garage slabs, including

2    a main garage and a second, smaller "hog pen."  Beginning sometime after October 3, 2006,

3    Shea replaced at least one garage slab at 101 different Trilogy homes.

4         125.    There are 871 homes at Trilogy, including 388 of Plaintiffs' homes, that have

5    defective garage slabs insofar as they were constructed without the required moisture barrier and

6    capillary break.  Fourteen of the 101 houses where Shea has replaced one but not both slabs, will

7    require replacement of the remaining slab.

8         126.    In 2009, Shea prepared an analysis of its "Exposure by Plan" for each of the

9    models at Trilogy that included knee braces or corbels.  According to Shea's own internal

10   analysis the total cost of replacing those components on the homes built to date exceeded $1.4

11   million.  Shea did not replace those components, however, but instead continued building homes

12   at Trilogy through and including 2011 without flashing the knee braces or corbels.  597 homes at

13   Trilogy were built with defective corbels and knee braces, including Plaintiffs' homes as set

14   forth in Exhibit 1.

15        127.    Shea's 2007 investigation of columns and one of its own experts concluded that

16   the footing or base of each column at Trilogy sits below the concrete flatwork of the home, and

17   that this is a major concern that will cause water to penetrate from the bottom up.  Every home at

18   Trilogy with columns suffers from this defective manner of column construction.  There are 687

19   homes at Trilogy that have defective columns that require repair, including Plaintiffs' homes as

20   set forth in Exhibit 1.

21        128.    On all of 1,275 of the homes that Shea built at Trilogy before May 1, 2008, Shea

22   omitted the required head flashings above every window.  When Shea finally began installing the

23   required head flashings, it did so sporadically so that of the remaining 207 homes built after May

24   1, 2008, at least 75 additional homes lack required window head flashings.  There are at least

25   1,350 homes at Trilogy that have defectively installed windows that require repair, including

26   Plaintiffs' homes as set forth in Exhibit 1.

27        129.    Shea's own expert admitted under oath in a related lawsuit that none of the

28   architect-specified and county-required metal head flashing is installed above the doors at

COMPLAINT - 46

HB  HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

Trilogy.  There are 1,522 homes at Trilogy that have defectively installed doors that require repair, including Plaintiffs' homes as set forth in Exhibit 1.

130.    For every Trilogy home with stone veneer wainscoting, Shea omitted the required metal flashing.  There are 851 homes at Trilogy that have defectively installed stone wainscoting that require repair, including Plaintiffs' homes as set forth in Exhibit 1.

131.    Shea's own expert has admitted that concrete should not have been poured against white wood as it was at Trilogy homes.  All 1,522 homes at Trilogy have defectively installed concrete patios, including Plaintiffs' homes as set forth in Exhibit 1.

132.    Shea failed to install the required flashing at the deck-to-wall interface of every home at Trilogy with a deck, and those decks all require repair, including on the homes of all Plaintiffs.

133.    Shea failed to install the required drainage at many Plaintiffs' homes, and as a result these Plaintiffs have incurred or will incur thousands of dollars in drainage repairs, mold remediation, and/or hardwood floor replacement.

134.    Shea failed to properly compact the ground or pour the driveways at dozens of Plaintiffs' homes, and as a result these Plaintiffs have incurred or will incur thousands of dollars in driveway repairs and/or replacement.

**D.    Shea Knows and Has Known for Years that Its Building Practices Are the Cause of the Defects in Homes at Trilogy, Yet it Refuses to Make Required Repairs and Instead Requires Homebuyers to Make Costly Repairs Under its "Homeowner Maintenance" Rubric**

135.    Recently obtained, internal Shea emails and statements by Shea personnel are shocking in their brazenness, including even outright mocking of homeowners for having "column envy" or "garage envy" when, for example, Shea replaces one homeowners' defective component while giving a litany of baseless explanations to another homeowner as to why the identical defect on her home is simply a "homeowner maintenance" problem.

They have "garage floor envy" since all of their neighbors have either had their floors tested or have new floors.  I knew this was coming.

COMPLAINT - 47

010462-11  724442 V1

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

136.    Shea customer service personnel responsible for responding to homeowner complaints about problems with their homes even joked internally in emails that the numerous, concealed defects on Trilogy homes guaranteed them:



137.    Carolyn Young, Shea's Customer Service Manager, recently explained homeowner "envy" under oath:

Q      What did you mean by that?
A      It means any time we do something at one home and neighbors see it, they think that they have column envy or any kind of envy, they want us to come out and review them.

138.    For example, Ms. Young inspected the Nicholsons' home and discovered that the column, which supported a roof structure, in addition to being severely saturated with water, was "missing the 4 x 4 structural support."  Ms. Young's concern was not the structural integrity of the home, but rather the neighbor's "column envy":

obtained the plan as well.  The column is missing the 4x4 structural support. The issue with the member is that we did not weather proof it correctly.  It states clearly on the plans that the plan is for the architectual design and that flashing and weatherproofing are the responsibility of the contractor.  He is asking us to repair the damage that rotted but indicated in our conversation that should I tell him no he would hold us to the plan that shows the 4x4.  Now......the house closed in 8/03 so it is clearly past the 6 years.  The other issue is that there are multiple of the same home on that street which would open a can of worms.  I believe we should repair it on the grounds that it was not built per plan but not the moisture issue.  I also have some ideas how we should change the construction when

139.    For years prior to Ms. Young writing this email in 2011, Shea already knew of the widespread water intrusion issues occurring at Trilogy.  In 2007, Shea commissioned an internal report on columns:

The water intrusion analysis for the front home of porch column on "PLAN 6230 (c)" has concluded that water is penetrating the cavity of the column in several ways. This has and is currently causing damage to the different building materials used in the construction of the column. Water is pooling above the column, absorbing thru the wood materials, bypassing exterior caulking used in seams, & eroding material. Thus causing the structural integrity of the column and its components to deteriorate at a fast rate. The use of metal flashing drip edges / water tables is being recommended to correct the problem. It

140.    Although Shea has represented to one court that these are "minor problems," its own internal analyses recently obtained clearly demonstrate that Shea has known from the outset,



1  but has never disclosed to buyers or owners at Trilogy, that these are serious and systemic

2  problems directly and solely attributable to Shea's omissions.

3      141.    These omissions were material in every respect.  The Shea Way – of cutting

4  corners to cut costs, of misleading and deceiving elderly home buyers while internally mocking

5  them, and of flouting its own geotechnical engineer, its architects, the County, and its

6  subcontractors' strong urgings throughout Shea's construction, marketing, and sale of the homes

7  at Trilogy – was unanticipated and unknowable by every buyer at Trilogy.

8          **V.    EQUITABLE TOLLING OF STATUTES OF LIMITATIONS**

9      142.    Plaintiffs' claims are subject to both equitable estoppel, stemming from Shea's

10  knowingly and fraudulently concealing the facts alleged herein, and equitable tolling, stemming

11  from Plaintiffs' inability to obtain vital information underlying their claims.  Shea is estopped

12  from relying upon a statute of limitations defense because Shea purposefully concealed its

13  knowledge of the above-described defects, and Shea purposely concealed its failure to seek

14  approval from the King County Building Department for its modifications to, and omissions

15  from, the approved building plans.  Separate and apart from Shea's acts of concealment, any

16  applicable statutes of limitations are properly tolled because Plaintiffs did not know and could

17  not have learned the true facts underlying their claims until this year.

18  **A.    Equitable Estoppel**

19      143.    Shea is estopped by its own fraudulent concealment from asserting the statute of

20  limitations as an affirmative defense against Plaintiffs' claims.  Throughout the construction and

21  sales of homes at Trilogy, Shea repeatedly asserted that its homes were built in accordance with

22  the approved plans and its high quality standards.  Continuing throughout its construction at

23  Trilogy and through to the present, Shea has asserted that it built all homes in accordance with

24  the building codes and industry standards.

25      144.    Plaintiffs reasonably relied on Shea's representations.

26      145.    Shea had actual or constructive knowledge that it violated the local building codes

27  by removing key building components from the permitted plans without approval from the King

28



HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

1  County Building Department.  Shea's conduct was deceptive, in that it consciously concealed its

2  knowing and material omissions.

3      146.    The purposes of the statutes of limitations period are satisfied because Shea

4  cannot claim prejudice due to a late filing where Plaintiffs filed this lawsuit promptly upon

5  discovering the facts essential to their claims, described herein, which Shea knowingly

6  concealed.

7  **B.      Equitable Tolling**

8      147.    Plaintiffs were unable to obtain vital information bearing on their claims absent

9  any fault or lack of diligence on their part.  As further set forth below, Plaintiffs were not on

10  inquiry notice of Shea's wrongdoing and had no duty to initiate any investigation.  Plaintiffs did

11  not have any reason to know of Shea's knowing omissions of key building components.

12     148.    Plaintiffs were relieved of any duty to investigate because they reasonably and

13  justifiably relied on Shea's representations that it constructed their homes in accordance with the

14  building plans and building code.

15     149.    Plaintiffs did not discover and could not have discovered, despite all due

16  diligence, that: (1) Shea unlawfully altered permitted plans; (2) Shea knowingly omitted key

17  building components; and, (3) Shea knew that its homes were damaged or would suffer damage

18  as a result of these omissions.

19     150.    Plaintiffs' claims were thus equitably tolled until they discovered the true facts

20  underlying their claims shortly before filing this Complaint.

### VI.    CAUSE OF ACTION

**VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT,
WASH. REV. CODE § 19.86**

23     151.    Plaintiffs re-allege and incorporate by reference the allegations contained in the

24  preceding paragraphs.

25     152.    Plaintiffs are persons within the meaning and coverage of the Washington

26  Consumer Protection Act, RCW 19.86 (the "CPA").

27

28

COMPLAINT - 50

010462-11  724442 V1



HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

153.   The CPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of commerce …."  RCW 19.86.020.

154.   Shea marketed to the public and sold to Plaintiffs and others homes that it built at Trilogy at Redmond Ridge.

155.   Shea unfairly and deceptively omitted to tell home purchasers that in constructing homes at Trilogy it deviated from:  (1) County code requirements; (2) from the recommendations of its architects and engineers; and (3) from its own submitted and approved plans by: (a) failing to install necessary and required water and moisture intrusion elements such as flashing, capillary breaks, vapor barriers, and adequate drainage; and (b) failing to construct driveways and common concrete fixtures with industry standard and required methods to prevent erosion, collapse, and other exposure-related failures.

156.   Shea's conduct, as detailed above, constitutes unfair and deceptive acts and practices in violation of the CPA.

157.   Shea's acts occurred in the conduct of trade or commerce.

158.   Shea's deceptive acts or practices impact the public interest and have the capacity to deceive a substantial portion of the public.  The acts are committed in the course of Shea's business; the acts are part of a pattern or generalized course of business; the acts were committed repeatedly prior to the acts involving Plaintiffs and since; and there is a real and substantial potential for repetition of Shea's conduct.

159.   Shea's unfair and deceptive acts and practices have directly and proximately caused damage to Plaintiffs.  But for Shea's unfair and deceptive acts and practices, Plaintiffs would not have suffered an injury.  The defects directly flowing from Shea's deceptive acts and practices for each Plaintiff's home are set forth in the attached Exhibit 1.

## VII.   PRAYER FOR RELIEF

160.   Plaintiffs pray for relief as follows:

A.   For judgment for Plaintiffs on their claims in an amount to be proven at trial, for compensatory damages caused by Defendants' unfair or deceptive practices, along with exemplary damages to each Plaintiff for each violation;

COMPLAINT - 51



HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

B.    For pre-judgment and post-judgment interest as provided for by law or allowed in equity;

C.    For an order awarding Plaintiffs their attorneys' fees and costs; and

D.    For such other and further relief as may appear necessary and appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury on all issues so triable.

DATED:  October 10, 2014.

Respectfully submitted,

By:   s/ Steve W. Berman
      Steve W. Berman, WSBA #12536
By:   s/ Thomas E. Loeser
      Thomas E. Loeser, WSBA #38701
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com
toml@hbsslaw.com


By:   s/ David von Beck
     David von Beck, WSBA No. 26166
dmvonbeck@levy-law.com
By:   s/ Katie J. Comstock
Katie J. Comstock, WSBA No. 40637
katie@levy-law.com
By:   s/ Sanford R. Levy
Sanford R. Levy, WSBA No. 11101
srlevy@levy-law.com
By:   s/ Seth E. Chastain
Seth E. Chastain, WSBA No. 43006
sechastain@levy-law.com
LEVY VON BECK & ASSOCIATES, P.S.
600 University Street, Ste. 3300
Seattle, WA  98101
Telephone:  (206) 626-5444
Facsimile:   (206) 382-5527

*Attorneys for Plaintiffs*

